EMIL KRUGER, ADMINISTRATOR OF EDWARD H. KRUGER, DECEASED, v. ANDREW BROWN.

Argued November 9, 1909—Decided January 13, 1910.

1. Where a contract may be terminated by a notice, the mailing of such notice properly addressed, with postage prepaid, raises a presumption that the notice reached the person to whom it was addressed, and if there be evidence which, if credited, would overthrow that presumption, a jury question is presented.

2. Where a contract purports to include the final result of the negotiations of the parties, oral testimony will not be admitted of prior or contemporaneous promises regarding a part of the transaction, without the adjustment of which the parties cannot be considered as having finally concluded their agreement.

---

On rule to show cause why verdict should not be set aside.

The defendant, as party of the first part, and the plaintiff's intestate, as party of the second part, entered into a written agreement, the material parts of which are as follows:

"Whereas, the party of the second part had issued to him by the government of the U. S. of America, letters patent No. 530695 on December 11th, 1894, for an improvement in shingle planers.

"Now, therefore, the party of the second part in consideration of one hundred and twenty-five ($125) dollars to be paid by the party of the first part at the end of each month, beginning with March 31st, 1906, during the life of this contract, has bargained, sold, leased and transferred and by these presents does sell, lease and transfer to the party of

the first part the sole and exclusive right to operate, use and practice the said inventions embodied in the said letters patent No. 530695 issued to the party of the second part on December 11th, 1894, and improvements, for and during the life of said letters patent, * * * subject however to the right of the party of the first part to terminate this contract at his option after March 1st, 1907, upon first giving six months' notice in writing to the party of the second part of such intention."

The plaintiff brought suit on this contract for the sum of the monthly payments accruing from June 6th, 1906, to October, 1908, inclusive, which was awarded by the verdict of the jury, whereupon defendant was allowed a rule to show cause why it should not be set aside.

Before Justices REED, BERGEN and MINTURN.

For the plaintiff, *Weller & Lichtenstein.*

For the defendant, *Frank H. Hall.*

The opinion of the court was delivered by

BERGEN, J. The reasons upon which it is sought to have the rule made absolute are that the charge of the court was erroneous in law, and that the verdict was contrary to the weight of the evidence. The complaint made against the charge relates to that part of it which submits to the jury the question whether a notice, alleged to have been given by the defendant to terminate the contract at the end of six months thereafter, was given according to the terms of the contract. The defendant's testimony on this point shows that such a notice was prepared and mailed to the plaintiff in an envelope properly addressed and postpaid. The testimony of the plaintiff was that no such letter ever reached him. On this point the trial judge instructed the jury as follows: "He describes the practice of the defendant as to the writing of letters and as to their mailing, and they say that the letter has never come back. Consequently that is evidence, if it is

undisputed, upon which you might predicate a conclusion that the notice had been given. But, however, that is only making out a *prima facie* case of the giving of notice. It is not at all conclusive upon the plaintiff; because, even if the notice had been mailed just exactly as they say, but went astray somehow, was lost in the mail in the course of transmission, and if, as a matter of fact, the plaintiff never received that letter, no matter if you conclude it was written and was mailed, the contract would not be terminated simply because the defendant wrote and actually mailed the letter; because his obligation, or his privilege was, under the contract, if he desired to terminate the agreement before its full expiration, to give the plaintiff notice of that desire and intention to terminate, and it was incumbent upon him to see that the plaintiff should get that notice." Where a contract may, by its terms, be terminated upon notice, the mailing of a letter, with postage prepaid, containing such notice, raises a presumption of fact that it reached the party entitled thereto, and if there be evidence that the person to whom it was addressed did not receive it, which if credited, would overthrow the presumption, a question for a jury to determine is presented. *Rosenthall* v. *Walker*, 111 *U. S.* 185. Such a question was raised in this case and properly submitted by the court to the jury.

The other reason urged in support of this rule is that the jury found, contrary to the weight of the evidence, that the contract expressed the entire agreement between the parties, because there was uncontradicted evidence showing an oral contemporaneous contract between the parties to the written instrument, and in part consideration thereof, which related to a subject-matter entirely distinct and separate from that contained in the writing. The claim of the defendant is that at the time the written agreement was signed, and in part consideration for the payment of $125 monthly during the life of such contract, there was made by the same persons an oral agreement, the terms of which were that plaintiff's intestate would furnish plans under which the machines covered by the letters patent mentioned in the written contract were

to be manufactured, and also that he would superintend their manufacture upon payment of his expenses, the amount of which was fixed with regard to the location where the defendant should determine to construct them. The death of plaintiff's intestate before any such plans were furnished or superintendence rendered is the ground upon which defendant rests his claim that the contract is not enforceable because of a total, or at least a partial, failure of its consideration. The trial court admitted testimony which it is alleged tends to show this oral agreement, and in its charge submitted to the jury the question whether the oral agreement was made as one collateral to the written, and if they so found, then they should consider both agreements as one. The defendant does not complain of this, nor would he have any reason to do so, for whether the evidence justified the submission of this question, or the law permitted it, the action of the trial court was as favorable as he could ask; what he does complain of is that the jury having found against him on this question their verdict is contrary to the weight of the evidence on this point. The argument of the plaintiff is that the evidence shows that the oral agreement was not collateral to the written, but on the contrary it tends to vary a written agreement and should, for that reason, have been excluded, so that whether the jury gave it due weight is not pertinent, and also that the evidence, if competent, does not establish the oral contract asserted. What appears regarding the oral agreement is to be found in the following testimony. Mr. Melliss, testifying to what took place prior to the execution of the agreement, said that, in addition to what appears therein, it was agreed "that Kruger would design and perfect drawings for a new planer, an improved planer, two channels (the old machine had three channels), and that he would furnish drawings for it, and if the machines were built at Elizabeth City, Mr. Brown was to pay him $5 a day for expenses in connection with superintending the machines, and if they were built elsewhere $10 a day. * * * The agreement in writing was drawn by Mr. Aydlett, and this conversation and agreement about furnishing

working drawings, and designing or perfecting the improved new machines took place at the same time."

Another witness, Mr. Lovegrove, was present during the negotiations leading to the contract, and testifies that he had a conversation with the deceased on that day, whether before or after the contract was executed does not clearly appear, in which deceased "informed me that an agreement had been arrived at between him and Andrew Brown, in reference to the shingle planing machine; that he should complete the drawings that he had partially finished, and deliver the same to Andrew Brown. * * * He said he was to deliver the drawings to Andrew Brown, and superintend the building of the machines."

Mr. Andrew J. Brown testifies that after the contract was signed, Mr. Kruger, the deceased, said to him: " 'I have made a contract with A. B., meaning Andrew Brown, about the shingle planer patents, and it is entirely satisfactory.' I said 'What agreement did you make?' He said, 'I am to be paid $125 per month; I am to make and furnish Mr. Brown plans and working drawings for two improved planing machines, and I am to supervise the building of the new machine. I am to receive $5 per day expenses if they are built in Elizabeth City, and $10 per day expenses if they are built in Williamsport, or any other place outside of Elizabeth City.' I said, 'When do you commence to make your drawings?' He said, 'I am going to begin at once.' * * * On several occasions, when I called on him at his room, he was working on his drawings—he was working in the corner of the room at a table, and the drawings were made on heavy drawing paper."

From this evidence, if we assume that the oral agreement has been established, it would appear that although the subject-matter was considered, or perhaps agreed to, during the negotiations, it was not embodied in the writing as the contract finally settled. The written instrument is complete in all that it undertakes to deal with, and is an agreement that the defendant might build and use shingle planing machines in certain states of the United States upon payment of $125

monthly during the life of the letters patent, and it is now sought to vary this by oral proofs, showing that, for the monthly payments, something was to be done by the vendee not set out in the written agreement, and which was not distinct from the subject of it, for it was an agreement to aid the purchaser by plans and drawings necessary to make available the right to construct the machines, which was, by the written agreement, granted to him. If without the plans he could not construct the planing machines, they were collateral to, but not distinct from, the subject-matter of the written contract. If this evidence be permissible, then oral proof that the vendor had agreed to furnish certain parts of the machines, to make the grant useful, would be competent, and thus an entirely new contract created for the parties. When the nature of the oral contract was developed the evidence in support of it should have been overruled. *Loxley* v. *Studebaker,* 46 *Vroom* 599.

Where a contract purports to include the final result of the negotiations of the parties, oral testimony will not be admitted of prior or contemporaneous promises on a subject which is so much a "part and parcel of the transaction itself, without the adjustment of which the parties cannot be considered as having finished their negotiations and finally concluded a contract." *Naumberg* v. *Young,* 15 *Vroom* 331, 342.

This renders it unnecessary to consider the question whether if the testimony was admissible, the finding of the jury that no such oral contract was made is contrary to the weight of the evidence, but in view of the evidence that plaintiff's intestate had refused to sign a previously prepared contract containing what, it is alleged, he orally agreed to; that it is testified that prior to the signing of the written agreement this important matter was discussed and made a part of the result of the negotiations, but not included in the writing prepared by the attorney of the defendant at the very time it was said to have been agreed to as the final conclusion of the parties, and the character of the evidence offered by defendant in support of his claim, which he was bound to prove by a preponder-

ance of evidence, the burden being on him, it cannot be said that the verdict is so clearly against the weight of the evidence as to justify setting it aside for that reason.

The rule to show cause is discharged.