71 N.J. Super. 347 (1962)
177 A.2d 47
JOSEPH SZCZESNY AND STELLA SZCZESNY, PLAINTIFFS-APPELLANTS,
v.
ANNA VASQUEZ, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1961.
Decided January 2, 1962.
*349 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. David I. Stepacoff argued the cause for appellants (Messrs. Patten & Pryga, attorneys; Mr. Stepacoff, of counsel).
Mr. Morgan R. Seiffert argued the cause for defendant-respondent (Messrs. Seiffert and Frisch, attorneys; Mr. Seiffert and Mr. Arthur S.A. Pataky, on the brief).
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiffs' single contention on appeal is that their proof of mailing notices of intention to the Unsatisfied Claim and Judgment Fund Board raised a presumption of receipt which was not rebutted by the Board and, for that reason, the decision of the trial court denying their application for payment of judgments out of the statutory Fund should be reversed. The essential facts *350 developed at the hearing must be assayed from the record preliminary to a consideration of the legal issues.
On July 31, 1957 plaintiffs were involved in an automobile accident with the defendant. Their separate tort actions were consolidated for trial by jury, which resulted in verdicts and judgments, $3,500 in favor of plaintiff Joseph Szczesny and $5,000 in favor of plaintiff Stella Szczesny, each against defendant Anna Vasquez. The judgments were entered on January 27, 1960. The debtor was not insured at the time of the accident. Plaintiffs' writ of execution was returned unsatisfied, and supplemental discovery proceedings did not disclose any available assets. In February 1960 plaintiffs received notice of defendant's bankruptcy proceedings. The judgments were uncollectible.
It is alleged that on August 20, 1957 plaintiffs, through their attorney, mailed to the Unsatisfied Claim and Judgment Fund Board notices of their intention to make claim against the Fund pursuant to N.J.S.A. 39:6-65. Trial counsel stipulated that the contents of the filed affidavits of W. Lewis Bambrick, manager of the Board's office, and Kay Urkin, senior clerk in the Security Responsibility Section of the Division of Motor Vehicles, should be considered the same as testimony on their behalf in the proceedings.
The sworn statement of Bambrick recites his responsibility relative to the office procedure for the processing of the statutory notices of intention to claim. He averred that notices on behalf of Stella Szczesny and Joseph Szczesny were received in his office on March 25, 1958 and were classified, at that time, as ineligible claims because they were received more than 90 days after the accident. He concluded: "A careful inspection of the records of this office shows no notices of intention filed by, or on behalf of, Stella Szczesny and Joseph Szczesny prior to March 25, 1958, and particularly for an accident of July 31, 1957."
Urkin asserted in her affidavit that she was employed exclusively to handle the Fund claim notices which are *351 given to her as they are received. They are immediately dated, stamped and recorded in a log book under the date of the accident, the names of the owners, and the vehicle operators involved in the accident. The forms are then hand-delivered by her to the office of the Unsatisfied Claim and Judgment Fund Board where they are distributed to investigators for further handling. Her affidavit further alleged that she received and processed claim notices of Stella Szczesny and Joseph Szczesny on March 25, 1958, which had the word "copy" typed at the top. She further said: "I checked the log book when I processed these notices and found that these were the first notices received from Stella Szczesny and Joseph Szczesny for the accident of July 31, 1957."
Plaintiffs' case is predicated upon the testimony of the lawyer then entrusted with their litigation, and that of his secretary. In substance, the attorney maintained that within three weeks after the clients' accident his office sent, by United States mail, notices of intention to make claim against the Fund. The clients were in his office on August 20, 1957, at which time they signed in blank the appropriate forms of claim, a retainer agreement, and authorizations to obtain the hospital and police records. These papers were turned over to his secretary, who was familiar with preparing such forms, together with his memorandum of necessary data for their completion. That same afternoon, the finished notices were placed on his desk along with a number of letters she had typed. He signed the letters and gave them, with the notices, back to his secretary for mailing. He testified that the notices were not accompanied by a transmittal letter from his office. On or about March 14, 1958, on reviewing the files, he observed the absence of any acknowledgment of the claims. He forthwith telephoned to Mr. Bambrick at the Board's headquarters, confirmed his inquiry by letter and, when in Trenton shortly thereafter, checked with Mr. Bambrick and a staff assistant the records of the agency *352 to ascertain the status of the claims alleged to have been mailed to the Board on August 20. A search of the files revealed no evidence of receipt, nor the existence of such claims. At the request of Mr. Bambrick, copies of the notices were sent to him on March 24, and receipt thereof acknowledged April 10 stating that "inasmuch as the notice was not filed within 90 days after the accident, no further action by the fund was indicated." The attorney further stated that he kept the Board advised as to the status of the litigation with respect to the court calendar. He admitted that the doctor's report had not accompanied the notices when mailed and, in fact, had not been forwarded to the Board until April 7, 1960  some considerable time after trial and the entry of judgments.
The secretary verified the testimony of her employer with respect to instructions, the preparation of the notices and the routine office-mailing procedure on August 20. In her words, after he "signed all his mail, he gave me everything, and I folded the mail, put it in the envelope, weighed it, put the stamps on it, and on my way home from work I go past the Post Office and I dropped it in the box." She refreshed her memory by reference to a daily "calendar pad" on which she made notations. The pad contained sheets, 3" x 3", with writing surface on two sides for each day, and was admitted in evidence without objection. On the August 20 pages, there were brief shorthand notes relating to "Szczesny" which she transcribed to mean "Sent Szczesny notice to Trenton." When interrogated, under cross-examination, as to whether it was possible that this notation was a reminder for her in the future, her answer was: "It could have been, but from the way I read my notes it says `sent.'" When asked if her testimony was really based entirely on said notation, she replied: "That notation, as well as the copy in the file."
The provision of the Unsatisfied Claim and Judgment Fund Act that notice shall be given within a stated time after the accident, as a condition precedent to the *353 right thereafter to apply for payment from the Fund, is mandatory. Schlenger v. Conti, 47 N.J. Super. 566, 570 (App. Div. 1957). The original act, known as the "Unsatisfied Claim and Judgment Fund Law," was adopted in 1952, and section 5 thereof (N.J.S.A. 39:6-65) has been engrafted with several amendments. L. 1952, c. 174, p. 574, § 5, as amended L. 1955, c. 1, p. 15, § 4; L. 1956, c. 200, p. 737, § 1; L. 1958, c. 99, p. 556, § 2. We are presently concerned with N.J.S.A. 39:6-65, as amended in 1956, which was in effect at the time of the accident. It provides that a qualified claimant:
"* * * shall, within 90 days after the accident, as a condition precedent to the right thereafter to apply for payment from the fund, give notice to the board, on a form prescribed by it, of his intention to make a claim thereon for such damages if otherwise uncollectible and otherwise comply with the provisions of this section; * * * In said notice he shall specify the time and place of the accident, identify the operators and vehicles involved therein and such witnesses to said accident, as are then known to him and describe the injuries then known to him and the damage to property sustained. Said notice shall be accompanied by (a) a certification by a physician of the injuries sustained so far as they can then be anticipated and of the treatment afforded by him, (b) itemized estimates of an automobile repairman or itemized bill, of the cost of repairs if the damage is to an automobile, (c) such information as is known to him with regard to liability insurance in effect with respect to the motor vehicles involved in the accident and (d) a copy of the complaint if an action has theretofore been brought for the enforcement of such claim. Such person shall * * * notify the board of any action thereafter instituted for the enforcement of such claim within 15 days after the institution thereof and such notice shall be accompanied by a copy of the complaint." (Emphasis supplied)
The mandate is to give notice to the Board and to otherwise comply with the particular section of the act. Thus, the present case is distinguishable from Delaware Township v. Neeld, 52 N.J. Super. 63 (App. Div. 1958), which dealt with a statute authorizing a review of complaints "made within" ten days after the Director of the Division of Taxation had promulgated tables of equalization values. The intendment of the legislation, there under review, was *354 to fix a time for the completion of an appeal. The word "made" was held to mean "filed," the rationale of the decision being in harmony with the statutory objective.
By force of statute or by agreement, a required notice may be effectively given if properly mailed, regardless of its receipt. Absent such a legislative enactment or contract provision respecting the method of giving notice, the general rule is that there is a presumption that mail matter correctly addressed, stamped and mailed was received by the party to whom it was addressed, which presumption is rebuttable and may be overcome by evidence that the notice was never in fact received. The rule is engendered by the probability that officers and employees of the postal department will do their duty, and by the regularity and certainty with which, according to common experience, the mail is delivered. See Borgia v. Board of Review, 21 N.J. Super. 462 (App. Div. 1952); Magazine Repeating Razor Co. v. Weissbard, 125 N.J. Eq. 593 (Ch. 1939); MacWhinney v. Jacobson, 109 N.J.L. 477 (E. & A. 1932); Schaffer v. Hurd, 98 N.J. Eq. 143 (Ch. 1925); Kruger v. Brown, 79 N.J.L. 418 (Sup. Ct. 1910); Hand v. Howell, 61 N.J.L. 142, 145 (Sup. Ct. 1897), affirmed 61 N.J.L. 694 (E. & A. 1898); 1 Wigmore, Evidence (3d ed. 1940), sec. 95, p. 524 ("The conditions are that the mail matter shall appear to have conformed to the chief regulations of the service, namely, that it shall have been sufficiently prepaid in stamps, correctly addressed, and placed in the appropriate receptacle"); McCormick, Evidence, sec. 309, pp. 641, 642 (1954); 2 Conrad, Modern Trial Evidence, sec. 968, p. 177 (1956); 39 Am. Jur., Notice and Notices, sec. 28, p. 249; 66 C.J.S. Notice § 18e(2). The authorities in this State supporting the rule are ample, without fortification by cases, which are legion, in foreign jurisdictions.
We do not agree with plaintiffs that: "It [the Board] waited until a verdict had been rendered and then galvanized into active refutation of liability." The judgments *355 on the verdicts were entered January 27, 1960, after a three-day trial. On March 25, 1958, when the copies of the claims were received by the Board, they were classified "ineligible" and, on April 10, 1958, plaintiffs' counsel was advised that no further action by the Fund was indicated. That the Board affirmatively and effectively denied receiving the claims prior to March 25, 1958 and that it promptly asserted non-compliance with the statute cannot be seriously questioned. Throughout the proceedings, the trial court emphasized the fact that the Fund denied receiving timely notice.
We cannot overlook the weaknesses that are evident in the circumstances supporting plaintiffs' claim and their asserted presumption of delivery; specifically, the following:
(1) The notices to the Board were not sent by registered or certified mail nor were return receipts requested, although such postal services are available.
(2) Notwithstanding the testimony of counsel's secretary that an accompanying letter is sent with legal papers when forwarded to the court for filing, no letter or similar precaution was employed in transmitting the alleged notice of intention to register a legal claim against the Fund.
(3) The postal laws provide for the return of undelivered letters and other mail matter, 39 U.S.C.A. 406-409,[*] but this provision was rendered meaningless when a plain envelope, without a return address, was used. This significant element impels us to note that misdirected mail, without the sender's address, enlarges the "dead letter" files of the Post Office Department; the amount of such mail militates against the strength of a presumption of delivery; and, in case of plain envelope mailing, we should not indulge in any presumptions as to the correctness of the intended recipient's address or as to the prepayment of adequate postage. The record fails to reveal any positive proof as to how or to whom the envelope or envelopes *356 containing the original notices were addressed, and whether or not it or they were sealed. The correct address and sufficiency of postage are not generally implied. Forrest v. Sovereign Camp, W.O.W., 220 Iowa 478, 261 N.W. 802 (Sup. Ct. 1935); Roshek Realty Co. v. Roshek Brothers Co., 249 Iowa 349, 87 N.W.2d 8, 12 (Sup. Ct. 1957); Selken v. Northland Insurance Co., 249 Iowa 1046, 90 N.W.2d 29, 388 (Sup. Ct. 1958); Rosengarten v. United States, 181 F. Supp. 275 (Ct. Cl. 1960), certiorari denied 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960).
(4) The unsigned copy of the original notice of Stella Szczesny was admitted in evidence. It was incomplete in that her alleged injuries were not described therein and a physician's certificate was not furnished, although the accident had occurred approximately three weeks prior and at least some of the information called for by statute was then in plaintiff's and her physician's possession. These requirements were statutory prerequisites to a valid and adequate claim. Admittedly, they were not submitted until the filing of the doctor's certificate in April 1960, approximately 29 months after the expiration of the 90-day claim period.
(5) Although there was some conflict in the testimony, the unquestioned position of plaintiffs is that a separate claim was filed on behalf of Joseph Szczesny. Neither the original nor a copy of this claim was offered in evidence. We are left in total darkness as to its contents and sufficiency.
(6) Undoubtedly, the clients were in the lawyer's office August 20, 1957 and signed papers. There was no need, however, for the notices in question to have been mailed on that day and, certainly, no justification for the submitting of incomplete forms so soon following the accident and the furnishing of the required vital information so long after the statutory period had run its course.
(7) The testimony of the secretary that, upon receiving the day's outgoing mail (August 20, 1957) from her employer, *357 it was folded, put into an envelope, weighed, stamped and dropped in a mail box by her, does not, under the circumstances of the present case, particularize with certainty the essentials of due mailing. Moreover, the mere dictation or writing of a letter, coupled with evidence of an office custom with reference to the mailing of letters, is not sufficient to constitute proof of mailing. Borgia v. Board of Review, supra, 21 N.J. Super., at page 468; Cook v. Phillips, 109 N.J.L. 371, 373 (E. & A. 1932).
(8) A shorthand notation by the secretary on her desk calendar-pad was deciphered by her to mean "Sent Szczesny notice to Trenton." This was the only notation of such a nature that day, although a great deal of mail was sent out. When pressed, under cross-examination, as to the possibility that the memorandum was a reminder to send the notice in the future  that "send," and not "sent," was the intended interpretation, she testified:
"It could have been, but from the way I read my notes it says `sent.'"
The significance of this conceivable uncertainty takes on added importance in view of her testimony that other than this memorandum, office routine and a copy of the notice in the file, she did not have any distinct recollection of mailing the particular claims to the Board on August 20. There is some doubt in the court's mind as to whether this notation really stood for "sent" or "send." However, in view of our disposition of the case, we deem it unnecessary to take any further testimony on this phase of the matter.
(9) In face of the statutory directive to give notice of claim to the Board, as a condition precedent, no conscientious or deliberate effort was made at the time of the alleged mailing to assure delivery of the notices or their return; or to take any action within the remaining nine weeks of the 90-day limitation period, in order to make certain that the alleged notices had been received.
*358 It is not contended by plaintiffs that they were physically incapacitated within the proviso of N.J.S.A. 39:6-65 permitting the enlargement of time to qualify, for the benefit of a disabled claimant. Every competent person is conclusively presumed to know the terms of the statute and those physically able to meet the conditions precedent are obliged to do so. See Russo v. Forrest, 52 N.J. Super. 233, 241 (App. Div. 1958).
The Unsatisfied Claim and Judgment Fund statute is a measure of social legislation. We should construe it liberally, "due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy." Giacobbe v. Gassert, 29 N.J. 421, 425 (1959); Corrigan v. Gassert, 27 N.J. 227, 237 (1958); Giles v. Gassert, 23 N.J. 22, 34 (1956). It was patterned after the Ontario Act, Part XIV of The Highway Traffic Act, Ont. Rev. Stat. 1950, c. 167. Id., at page 31. In Re Sinclair v. Woodard, 1 D.L.R. 398 (1952), O.W.N. 816 (1952) (Ont. Ct. App. 1951), the Canadian court in construing said law observed that it was not the legislative intent to make access to the Fund easy and that each application should be closely examined to insure that the legislative intent is given full effect. Said that court at page 400: "Every provision of the act designed for the protection of the Fund should be given full consideration and effect." See Myers v. Cave, 55 N.J. Super. 185, 198 (App. Div. 1959).
In essence, the judiciary of this State is the guardian of the trust monies represented by our statutory Fund. Douglas v. Harris, 35 N.J. 270, 279 (1961). As we pointed out in Schlenger v. Conti, supra, 47 N.J. Super., at page 570, the notice provisions of N.J.S.A. 39:6-65 could not more clearly be expressed. The act itself specifically provides for certain conditions precedent and this court is not at liberty to modify or re-legislate these protective restrictions, which are stated in plain, understandable and unambiguous language. The doctrine of *359 liberal construction relates to the scope of the legislation and not to the proof or the evidence necessary to establish compliance with its terms and conditions. "It does not operate to distort the proofs or to make the facts other than as they are." Grotsky v. Charles Grotsky, Inc., 121 N.J.L. 461, 465 (Sup. Ct. 1938), affirmed 124 N.J.L. 572 (E. & A. 1940), approvingly cited by this court in Page v. Federated Metals, Inc., 71 N.J. Super. 59 (App. Div. 1961). The argument that the Board, in the instant case, has in no way been prejudiced or disadvantaged is without merit. See Giacobbe v. Gassert, supra, 29 N.J., at page 426.
We have surveyed the record with care and have reached the inescapable conclusion that plaintiffs did not, within the statutory period of 90 days from the date of the accident, give notice and otherwise satisfy the conditions precedent, as contemplated by N.J.S.A. 39:6-65. Having reached that conclusion, it is not necessary in this opinion to consider the nature and quantum of proof needed to rebut a presumption of receipt which arises from evidential proof establishing the fact of due mailing. This court has heretofore recognized that in this area of the law, as with all presumptions, there is "intolerable confusion." In re Weeks' Estate, 29 N.J. Super. 533, 536 (App. Div. 1954). See also Morgan, "Instructing the Jury upon Presumptions and Burden of Proof," 47 Harv. L. Rev. 59 (1933) and Morgan, "Presumptions," 10 Rutgers L. Rev. 512, 516 (1956).
Affirmed.
NOTES
[*] Now 39 U.S.C.A. §§ 4101, 4103, 4107, 4108.