No. 21591.

JESS LEDBETTER *v.* SCHOOL DISTRICT NUMBER EIGHT, EL PASO COUNTY, COLORADO.
(428 P.2d 912)

Decided June 19, 1967.      Rehearing denied July 17, 1967.

Donald E. LaMora, Allen T. Compton, for plaintiff in error.

Horn, Anderson & Johnson, for defendant in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

Plaintiff in error, to whom we will refer as plaintiff, was employed as a teacher by School District No. 8, El Paso County, hereinafter denominated the district. He brought suit against the district to have the court decree an attempted termination of his employment to be a nullity. In addition, he sought a judgment for back pay and an order restoring to him all rights under pertinent statutes, namely, C.R.S. 1963, 123-18-3 and 123-18-8.

Plaintiff had been a teacher in the district under three successive one year contracts beginning on September 1, 1960 with an expiration date of May 29, 1963 in the third contract.

The provisions of section 8, *supra,* are as follows:
"*Automatic re-employment.* — Any teacher in the public schools employed on a fulltime basis but not under continuous tenure shall be deemed re-employed for the succeeding year at the same salary unless the employing board of education shall cause notice in writing to be given said teacher on or before the 15th day of April of the term of school in which the teacher is employed, and such teacher shall be presumed to have accepted such employment unless he shall notify the employing board of education in writing to the contrary on or before said 15th day of April."

Thus plaintiff's employment as a teacher for the school year commencing in September, 1963, would be automatically renewed unless he was *given* written notice of termination of his contract on or before April 15th.

The district having determined not to renew plaintiff's contract for a fourth year, sent notice of termination by registered mail to the plaintiff on April 11, 1963. The letter, however, was addressed to plaintiff's former address. On April 13, 1963 the letter was rerouted by the post office to the correct address, but on that date plaintiff was not at home so that the regularly printed post office notice was left at the plaintiff's home, notifying the addressee to call at the post office to "pick up" the registered mail. Plaintiff testified that he did not receive this notice, but admitted in his stipulation of facts that he did get a final notice on April 18, 1963. On April 23rd he went to the post office to pick up the letter. The envelope was stamped in the Fountain, Colorado, post office on April 11 at 5 P.M. The notifications of both April 13th and April 18th were also recorded thereon as well as the date the letter was taken from the post office.

On the sole question presented to the trial court as to whether the plaintiff had been given notice before the deadline of April 15, 1963 as provided by the statute, the trial court found:

"* * * The notice must be in writing, the method of getting the written notice to the teacher is not set out. The legislature did not intend any particular method, as none is stated in the statute. The notice could be personally handed to the teacher, mailed to him by ordinary mail, or sent by registered mail. The fact that the p aintiff by reason of his own absence failed to receive the letter before April 15 cannot defeat the giving of the notice. Any other interpretation would put a premium on avoiding receipt of notice and would result in chaos rather than orderly planning on the part of both teacher and school board."

The judgment of dismissal of plaintiff's claim was accordingly entered.

We agree with the findings and judgment of the trial court. In so doing we distinguish between situations wherein notice must be *served* or *received* and those in which notice is to be *given* as in the instant case. While there are few cases applicable to the narrow area in which we are now dealing, we subscribe to the rationale contained in *Robel v. Highline Public Schools,* 65 Wash. 2d 477, 398 P.2d 1, in which the court cited *Ford v. Genereux,* 104 Colo. 17, 87 P.2d 749. In *Robel* the Washington Supreme Court modified the holding of the Colorado court that notice is effective when the letter is properly addressed, registered and mailed, and extended the rule to provide that effective notice starts after reasonable time for transmission and receipt of the notice has elapsed. The court therein pointed out that the time recognized for transmission of a registered letter varies under the particular circumstances of a case, but that a person cannot benefit from noncompliance which he himself has occasioned. *R. H. Sterns Co. v. United States,* 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647.

Whether we follow the rule in the *Ford* case, *supra,* or the modification by the Washington Supreme Court in *Robel, supra,* the result herein would be the same. In the case at bar the district gave notice as required by law, using a method universally accepted by the general public and prescribed by statute in many states for the conveying of important documents and the giving of statutory notices. Although the means of giving notice is not set out in the statute, if the district uses a method recognized as an acceptable one in the law, then the cases setting out the test to be applied to the particular method employed are persuasive. Using the test in the *Ford* case, April 11th, the date of registering and mailing, would be the effective date. Under the rationale in the *Robel* case, April 13th is the effective date. The attempt

to deliver the registered letter was made on April 13th. Had plaintiff not been away from his home he would have received the letter on that date. Furthermore, on that date a notice that the letter was in the post office awaiting to be claimed by him was left at his home. He did not actually pick up the registered letter which reposed in the post office until April 23rd — five days after admittedly receiving the "final notice." It would, therefore, not be logical to use the date he actually went for the letter as the crucial one. The delay in delivery was through no fault of the district.

The judgment is affirmed.

Mr. Justice Sutton dissents.

Mr. Justice Sutton Dissenting:

I dissent because I believe the general rule on the giving and receipt of notice is other than as enunciated by the majority opinion.

The statute involved in this controversy is C.R.S. 1963, 123-18-8 (formerly C.R.S. '53, 123-18-8) which reads:

"Automatic re-employment. — Any teacher in the public schools employed on a full-time basis but not under continuous tenure shall be deemed re-employed for the succeeding year at the same salary unless the employing board of education *shall cause notice in writing to be given said teacher* on or before the 15th day of April of the term of school in which the teacher is employed, and such teacher shall be presumed to have accepted such employment unless he shall notify the employing board of education in writing to the contrary on or before said 15th day of April." (Emphasis added.)

As the majority opinion correctly observes, the mode of delivering the notice to the teacher is not set out in the act and the legislature evidently did not intend any particular method. This does not mean, however, that the Board could select a delivery method that *in fact* did not give the required notice on or before April

15th. This is especially so where the Board had at its disposal an assured way of delivery by merely handing the employee the notice at his place of employment some time before the crucial date. Clearly it is the employer who has the affirmative duty under this statute.

In my view, the statutory wording "shall cause notice in writing to be given said teacher" implies that there will be an actual receipt of notice by the teacher. I am supported in this position by the teacher dismissal case of *School District No. 6 of Pima County v. Barber*, 85 Ariz. 95, 332 P.2d 496 (1958) where the Arizona Supreme Court held that such a statute gives a teacher a "personal right which must be strictly followed." There the court stated:

"* * * We also said in Cameron v. Shuttleworth, 75 Ariz. 61, 251 P.2d 659, that where a statute does not specify the manner in which a notice is to be given, 'personal notice' is required. Assuming but not deciding that 'personal notice' permits service by mail, the appellant is still faced with the insurmountable hurdle of the c.ear language of the statute that appellees were to be given notice *on or before March 15, 1957.*

"The rule has been laid down that in the absence of custom, statute or express contract, a notice sought to be served by mail is not effective until it comes into the hands of the one sought to be served." (Citing cases.)

And, this general rule has also been followed in non-school cases. *E.g., Johnson v. Barreiro*, 59 Cal. App.2d 213, 138 P.2d 746 (1943); *Regan v. Atlantic Refining Co.*, 304 Mass. 353, 23 N.E.2d 869 (1939). The rule is also set forth in 39 Am. Jur., *Notice and Notices* § 9 where it is stated:

"*Where a statute requires notice to be given, it is the general rule of law that actual personal notice is required*, and the notice must be personally served on the person to be notified." (Emphasis added.)

In the same chapter at § 28 it is further stated:

"Mailing of notice to a person at his known address

within the state may be authorized as a mode of service, but *in the absence of a statute authorizing the service of a notice by mail, a notice so served is ineffective unless it is received.*" (Emphasis added.)

To the same effect is 66 C.J.S., *Notice* § 18(c) where it is said:

"* * * In the absence of statute providing otherwise, notice, and particularly notice to one at a specified place, is not given until it is received by the person to be notified, at the place specified. * * *."

Although the general rule is that a letter properly addressed with prepaid postage attached thereto and deposited in the mails is presumed to have been received in the ordinary course of mail delivery, such is a rebuttable presumption. *Szczesny v. Vasquez,* 71 N.J. Super. 347. 177 A.2d 47 (1962); 39 Am. Jur., *supra* § 28. The only evidence in the record of this case is that Ledbetter *did not in fact* receive the notice until after April 15th thus this presumptive rule cannot apply here. For example, sending mail on the final day set by a statute for notice to be given is not sufficient. *Barber, supra; Rapid Motor Lines, Inc. v. Cox,* 134 Conn. 235, 56 A.2d 519 (1947). "Generally speaking. substituted and constructive notices are not favored in law and are countenanced only as a matter of necessity or extreme expediency." *Johnson, supra;* 66 C.J.S., *supra* § 18(c). No such grounds for waiving that rule appear here where a right was already vested in Ledbetter.

The majority decision states that it follows the reasoning set forth in *Robel v. Highline Public Schools, District No. 401, King County,* 65 Wash.2d 477, 398 P.2d 1 (1965), which cited *Ford v. Genereux,* 104 Colo. 17, 87 P.2d 749 (1939). My reading of those cases indicates they should not be persuasive here. In *Robel* the statute expressly required the notice to be sent by certified or registered mail or to be served personally. The pertinent issue determined there was only that the notice, which was mailed to the actual home address of the teacher

seventeen days before it was due and when someone was at her home while she was on sick leave, was deemed legally delivered. *Robel* went on to hold that if registered mail is used to transmit the notice, then it is not effective until a reasonable time has elapsed for transmission and receipt of the notice. This would seem to be only a modification or limitation on the rule that notice is not effective until received. *Ford* is clearly distinguishable from the instant case, for it involved statutory notice given in connection with a tax sale under a statute which provided both for personal service and service by registered mail with the latter being the method in fact used. There the correctness of the post office address was not in question. Also, the evidence in *Ford* was that the addressee had received the notice on April 27, 1937, long before the issuance of the tax deed on July 24, 1937. Since the addressee did in fact receive notice before the crucial date the additional comment in *Ford* as to when service was complete on deposit in the mails is dicta even though it sets forth reasons for so holding. In addition, such dicta is contrary to the general rule, cited above, that there must be a reasonable time allowed for the receipt of mail — thus it should be overruled.

In the instant case we have an entirely different situation than in *Robel* or *Ford, supra.* Here it was expressly stipulated in writing that Ledbetter, when first employed, lived at 1011 Milky Way Drive in Colorado Springs, that "he moved for a short period of time to 2624 Waldean," and "that on or about March 30, 1963 Plaintiff moved from said address to 1114 Milky Way Drive * * * and further that Plaintiff notified the office of the Principal of the school in which he was teaching of these changes of address." In spite of the knowledge of its agent, the Board, on April 11, 1963 (a teaching school day when plaintiff was admittedly present at the school), "* * * directed a letter to Plaintiff at 2624 Waldean * * *." It was further stipulated "That there

was no school in session on Friday, April 12, 1963 * * *"
and "That on Friday, April 12, 1963 and on Saturday,
April 13, 1963, Plaintiff and his wife were out of town
visiting various friends. * * *. That Plaintiff was ill
Sunday, April 14, 1963, and Monday, April 15, 1963;
that no school sessions were held on April 15, 1963, be-
cause of spring vacation."

In spite of the fully justifiable absence of this plaintiff
on April 12th and 13th, and with the 14th and 15th
being school holidays, nevertheless, the majority, ignor-
ing the general rule that a mailed notice under such a
statute is only valid when received, holds, as a matter
of law, that plaintiff received his termination notice on
or before April 15th even though in addition it was ad-
mittedly mailed to him at a wrong address. Such a con-
struction of this statute seems to me to be the most
obvious type of judicial legislation. If the legislature
had desired to achieve such a result it had the oppor-
tunity, as it has done in other statutes, to have added
a proviso permitting or requiring service by mail, in
which case the rule now applied by the majority would
be proper indeed.

By its holding, the majority says in effect that if a
person does not wait at home to see whether he will
receive a statutory notice (which the general rule states
is not valid until received) that, nevertheless, he is in
law presumed to have received it if it is mailed at any
time before the required deadline. To me this is a dan-
gerous concept unfounded in law or reason and in the
instant case is inequitable as well. There is no legal
reason why this plaintiff had to wait around to see if
he was to be served and discharged. My position is that,
under a statute such as this, when the employer or other
person charged with the duty of giving a notice *elects*
to serve by mail when the law does not so specify, his
conduct falls under the general rule that his notice is
not good until received. To hold otherwise deprives this
plaintiff of his express statutory right to permanent

136

tenure and improperly shifts a burden to him which belongs to his employer.