# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SHIEKHYLA R.<br>
ABDUL-RAHMAN,

   Appellant,

  v.

DELAWARE STATE<br>
BOARD OF NURSING,

   Appellee.

)<br>
)<br>
)<br>
)<br>
)  C.A. No.:  K25A-04-001 RLG<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)

Submitted:  June 17, 2025<br>
Decided:  September 30, 2025

## MEMORANDUM OPINION AND ORDER

*Appeal of a Decision of the Board of Nursing*<br>
**AFFIRMED in part, REMANDED in part**

*Pro Se* Appellant.

Jennifer Singh, Esquire, Deputy Attorney General, Wilmington, Delaware. *Attorney for Appellee.*

**GREEN-STREETT, J.**

## I.        Introduction

The Delaware State Board of Nursing sought to annul the licenses of nurses who attended nursing schools implicated in a scheme to produce fraudulent degrees. One of the affected licensees did not request a hearing to contest the annulment within the requisite time frame. The Board of Nursing annulled her license on that basis. The former licensee now appeals that decision, arguing the Board of Nursing violated her due process rights. As the Board of Nursing's decision to deny the licensee a hearing did not violate due process, that decision is **AFFIRMED**. The record before the Court, however, does not provide enough information to determine whether the decision to annul her license was based on substantial evidence and free of legal error. Accordingly, this matter is **REMANDED** to the Board of Nursing for further proceedings.

## II.        Factual and Procedural Background

On September 1, 2022, the Federal Bureau of Investigation (the "FBI") notified the Delaware Board of Nursing (the "Board") about a scheme involving several Florida-based nursing schools awarding fraudulent nursing degrees.[1] Based on the FBI's report, the Board began examining the credentials of Delaware-licensed

---

[1] App. to Answering Br. at A1; see Agbemehia v. Delaware Bd. of Nursing, 2024 WL 66047, at *1 (Del. Super. Jan. 5, 2024) (discussing the FBI's investigation into the various nursing schools accused of fraud).

nurses with any ties to the FBI's investigation.[2]  Appellant Shiekhyla Abdul-Rahman attended one of the schools implicated in the investigation – Med-Life Institute.[3]

On January 17, 2025, the Board sent a letter to Ms. Abdul-Rahman informing her of:  (1) the FBI's investigation generally; (2) the Board's review of two other Med-Life Institute students, who attended around the same time as Ms. Abdul-Rahman, who were determined to possess fraudulent degrees; and (3) the Board's belief that Ms. Abdul-Rahman obtained a fraudulent degree and misrepresented her education on her application for a Delaware nursing license.[4]  The letter concluded with a notification to Ms. Abdul-Rahman that she could request a hearing to contest the Board's finding within ten days of the date of the letter.  Further, the letter warned that, if she failed to request a hearing within the requisite ten-day timeframe, her "license [would] be annulled."[5]  The Board sent the letter to the address on Ms. Abdul-Rahman's license application – by both certified mail and first-class mail.[6]

---

[2] Answering Br. at 18.

[3] Id.

[4] App. to Answering Br. at A1-2.

[5] Id. at A2.

[6] Id. at A1; see also Answering Br. at 10.

3

On January 25, 2025, the United States Postal Service left a slip in Ms. Abdul-Rahman's mailbox indicating a failed attempt to deliver the certified letter.[7] Ms. Abdul-Rahman represents that she retrieved the certified letter on February 14, 2025.[8] She asserts she never received the letter sent via first class mail.[9] On February 17th, Ms. Abdul-Rahman called the Board and left a message.[10]

On February 19th, she emailed the director of the Board – Pamela Zickafoose – explaining that she did not receive the Board's letter until February 14th and requesting a hearing.[11] Ms. Zickafoose replied back the same day, informing Ms. Abdul-Rahman that, because she failed to request a hearing within ten days of the Board's letter, the Board would not hold a hearing.[12] Ms. Abdul-Rahman renewed her request for a hearing on February 20th, and received another denial from Ms. Zickafoose.[13] At a meeting of the Board on March 5, 2025, the Board voted to annul the license of all licensees who failed to make a timely request for a hearing to

---

[7] Ex. to Notice of Appeal at 3.

[8] Opening Br. at 5.

[9] Id.

[10] Id.

[11] Ex. to Notice of Appeal at 3.

[12] Id.

[13] Id. at 6.

4

contest the annulment – including Ms. Abdul-Rahman.[14]  That same day, the Board

sent a letter to Ms. Abdul-Rahman informing her of the annulment.[15]

Ms. Abdul-Rahman filed the instant appeal on April 4, 2025.[16]  She filed her

Opening Brief, *pro se*, on May 15, 2025.[17]  The Board filed its Answering Brief on

June 9, 2025.[18]  Ms. Abdul-Rahman filed her Reply Brief on June 17, 2025.[19]

## III.    Standard of Review

Under 29 Del. C. § 10142(c), this Court reviews a board or agency's case

decision "on the record without a trial *de novo*."   "The Court, when factual

determinations are at issue, shall take due account of the experience and specialized

competence of the agency and of the purposes of the basic law under which the

agency has acted."[20]   The Court considers whether the Board's decision "was

supported by substantial evidence on the record" and "free of legal error."[21]  "Unless

the [B]oard erred as a matter of law, did not support its decision by substantial

---

[14] App. to Answering Br. at A23.

[15] Id. at A24.

[16] D.I. 1 (Apr. 4, 2025).

[17] D.I. 7 (May 15, 2025).

[18] D.I. 8 (June 9, 2025).

[19] D.I. 12 (June 17, 2025).

[20] 29 Del. C. § 10142(d).

[21] Id.

5

evidence, or abused its discretion, the Court will uphold the [B]oard's decision."[22] "Substantial evidence is evidence that would lead a reasonable mind to support a conclusion."[23]

## IV. <u>Analysis</u>

Ms. Abdul-Rahman's appeal centers on two arguments. First, she contends the Board violated her right to due process by refusing to consider her request for a hearing. She asserts she did not receive notice of the deadline to request a hearing until after the deadline expired, affording her no opportunity to contest the Board's findings.[24] Second, she posits the Board lacked substantial evidence to support its decision to annul her license.[25]

### A. The Board provided Ms. Abdul-Rahman sufficient notice to contest the annulment of her license

The Board sent Ms. Abdul-Rahman notice of its intention to annul her license on January 17, 2025, by both certified mail and first-class mail.[26] That notice informed Ms. Abdul-Rahman of the grounds for the proposed annulment, as well as

---

[22] <u>Cooper v. Del. Bd. of Nursing</u>, 2021 WL 754306, at *3 (Del. Super. Feb. 26, 2021), <u>aff'd</u>, 264 A.3d 214 (Del. 2021) (citing <u>Eckeard v. NPC Int'l, Inc.</u>, 2012 WL 5355628, at *2 (Del. Super. Oct. 17, 2012)).

[23] <u>Id</u>. (citing <u>Olney v. Cooch</u>, 425 A.2d 610, 614 (Del. 1981)).

[24] Opening Br. at 7.

[25] <u>Id</u>. at 6-7.

[26] App. to Answering Br. at A1-2.

6

the deadline of ten days to request a hearing to show she met the statutory qualifications for her license.[27] By her own admission, Ms. Abdul-Rahman did not request a hearing within ten days of January 17th.[28] She did not make a request for a hearing until, at the earliest, February 17, 2025.[29]

Ms. Abdul-Rahman does not allege that the Board failed to conform with any statutory requirements, nor that the notice it provided her contained any deficiencies.[30] Instead, she asserts that: (1) she did not receive the notice sent by certified mail until February 14th; and (2) she never received the notice sent by first-class mail.[31] She argues the Board has not provided any evidence she received the notice sent by first class mail, and, thus, should have allowed her to request a hearing within ten days of her *actual* receipt of the notice sent by certified mail.[32]

"Generally speaking, the law requires that notice be actually received in order to be effective for all purposes."[33] "However, there is a presumption that mailed

---

[27] Id. at A2.

[28] Opening Br. at 5.

[29] Id.

[30] 29 Del. C. § 10131(c) required the Board to afford Ms. Abdul-Rahman "at least 10 days to request a hearing."

[31] Opening Br. at 5.

[32] Id.

[33] State ex rel. Hall v. Camper, 347 A.2d 137, 138 (Del. Super. 1975).

matter, *correctly addressed*, stamped[,] and mailed, was received by the party to whom it was addressed."[34] "This presumption may be strengthened, weakened[,] or overcome by proof of attendant pertinent circumstances."[35] A mere denial of receipt does not constitute a sufficient rebuttal.[36] Rather, the party arguing she never received the mail in question must provide "evidence that notice was never in fact received."[37]

Ms. Abdul-Rahman has provided no evidence that she did not receive the notice sent by first-class mail. The Board addressed that notice with the address listed on her license application.[38] The Board sent Ms. Abdul-Rahman notice via certified mail to the same address, which Ms. Abdul-Rahman confirmed she received and retrieved.[39] Further, the Board notified Ms. Abdul-Rahman of the final annulment of her license via both certified mail and first-class mail to the same

---

[34] Windom v. William C. Ungerer, W.C., 903 A.2d 276, 282 (Del. 2006) (emphasis in original) (internal quotations omitted) (quoting Hall, 347 A.2d at 138).

[35] Id. (internal quotations omitted) (quoting Graham v. Commercial Credit Co., 194 A.2d 863, 865-66 (Del. Ch. 1963)).

[36] Id.

[37] Hall, 347 A.2d at 138 (citing Szczesney v. Vasquez, 177 A.2d 47, 50 (N.J. Super. 1962)).

[38] App. to Answering Br. at A17.

[39] Id.; see also Opening Br. at 7.

8

address.[40]  Ms. Abdul-Rahman does not dispute that she received both of those notices at the listed address.

The Board mailed Ms. Abdul-Rahman notice of the ten-day window to request a hearing at an address: (1) that Ms. Abdul-Rahman provided; and (2) at which she received other notices from the Board.  This Court presumes notice sent to a confirmed address reached its intended target.  Ms. Abdul-Rahman has not provided any evidence to demonstrate that she never received the letter sent via first-class mail beyond a denial of receipt.  That denial does not overcome the presumption that she received adequate notice.  Accordingly, Ms. Abdul-Rahman has not demonstrated that the Board violated her due process rights by failing to extend the deadline for her to request a hearing.

### B.    The sparse record prevents the Court from finding that the Board based the annulment on substantial evidence

As Ms. Abdul-Rahman failed to make a timely request for a hearing, the Board proceeded to annul her license based on the reasons outlined in its notice to her.[41]  Ms. Abdul-Rahman argues the evidence outlined in the notice – as well as discussion by the Board before its vote to annul her license – did not constitute substantial

---

[40] Answering Br. at 14.

[41] See App. to Answering Br. at A1-2.

9

evidence sufficient to annul her license.[42]  Specifically, she posits the "record lacks any individual factual findings concerning [her] conduct or educational history."[43]

When reviewing the evidence upon which the Board's decision relied, this Court limits its review "to determining whether the Board's factual findings are supported by substantial competent evidence[,] and [ ] whether the Board committed any errors of law."[44]  The Board may rely on its own experience and expertise in assessing the evidence before it.[45]  Delaware statutory and decisional law require this Court afford the Board "substantial deference" regarding its factual determinations."[46]

During the meeting in which the Board voted to annul Ms. Abdul-Rahman's license, the record does not reflect any substantive discussion about or examination of Ms. Abdul-Rahman's credentials, or lack thereof.[47]  The Board did not discuss the

---

[42] Reply Br. at 4.

[43] Opening Br. at 6.

[44] Michael v. Del. Bd. of Nursing, 2017 WL 3980540, at *3 (Sept. 8, 2017).

[45] Delaware Bd. of Med. Licensure & Discipline v. Grossinger, 224 A.3d 939, 955–56 (Del. 2020) (citing Bilski v. Board of Medical Licensure and Discipline, 2014 WL 3032703, at *4 (Del. Super June 30, 2014), aff'd 115 A.3d 1213 (Del. 2015) (TABLE)).

[46] Id. at 953.

[47] App. to Answering Br. at A23.

10

specific school Ms. Abdul-Rahman attended.[48] This dearth of discussion or examination leaves the facts contained in the notice of the proposed annulment sent by the Board – and the Board's application of its collective experience and expertise to those facts – as the basis for the Board's decision. Those facts are considered uncontested given Ms. Abdul-Rahman's failure to request a hearing before the expiration of the ten-day deadline.

The notice letter sent by the Board began by advising Ms. Abdul-Rahman of the FBI's investigation into several nursing schools in Florida.[49] It noted the Board received notification that two students who graduated from Med-Life's Lauderdale Lakes campus received fraudulent degrees.[50] The Board reviewed transcripts for those two students, and concluded the degrees were fraudulent.[51] Ms. Abdul-Rahman's application revealed she also graduated from Med-Life's Lauderdale Lakes campus "in or around the same time as [the fraudulent degree-receiving] individuals while living in Delaware."[52] The Board found that singular fact

---

[48] Id. (The Board did discuss what appears to be another campus of the same institution, but the Board represents this discussion as "distinct from the vote to annul her license." See Reply Br. at 19).

[49] Id. at A1.

[50] Id.

[51] Id.

[52] Id.

11

dispositive. In both its notice letter and its final decision letter, the Board emphasized that Ms. Abdul-Rahman "[appeared] [to] have been issued a fraudulent degree."[53]

The notice letter advised Ms. Abdul-Rahman of the statutory requirements for a nursing license in Delaware – and the Board's belief that she failed to comply with those requirements because she did not possess a valid nursing degree.[54] The Board did not identify any other disqualifying facts contained within Ms. Abdul-Rahman's application aside from the school she attended. The Board did not explain why it believed she "may have obtained a license from the Delaware State Board of Nursing through fraudulent misrepresentation," beyond commenting that "[she] [did] not appear to be a graduate of a State Board of Nursing approved nursing education program."[55]

A review of the notice letter sent by the Board; the minutes from the meeting when the Board voted to annul Ms. Abdul-Rahman's license; and the final decision letter from the Board shows no indication that the Board reviewed any of her credentials beyond noting which school she attended. Nothing in the record indicates the Board ever reviewed Ms. Abdul-Rahman's transcripts. Further, the

---

[53] Id. at A1, A24.

[54] Id. at A1-2.

[55] Id. at A2.

Board never stated it confirmed her degree was fraudulent – only that it received notice two of her peers from the same campus received fraudulent degrees.[56] The Board explained that, when it "reviewed [those] individuals' transcripts, it determined that those applicants' nursing degrees did not meet the Board's standards for a professional nursing education program."[57] The Board highlighted those individuals "were missing required courses and did not complete sufficient clinical hours."[58]

Those statements by the Board further underscore that the Board *did not* conduct any such review of Ms. Abdul-Rahman's credentials. Her transcript may contain the hallmarks of a fraudulent degree identified by the Board in similar cases, but the record does not reflect that the Board ever reviewed her transcript substantively to make that determination. Similarly, the record does not reflect a finding by the Board that *all* students who attended Med-Life Lauderdale Lakes – during an unspecified timeframe[59] – received fraudulent degrees. The record also

---

[56] Id. at A1.

[57] Id.

[58] Id.

[59] The Board notes in its Answering Brief that this timeline encompasses "individuals who graduated in or around 2018." Answering Br. at 20. That reference marks the first time in these proceedings that the Board advised anyone, including Ms. Abdul-Rahman, of the relevant timeline wherein schools such as Med-Life Lauderdale Lakes issued fraudulent degrees.

13

does not contain any statement that the FBI specifically notified the Board that Med-Life Lauderdale Lakes solely issued fraudulent degrees.

The Board first contends it "arguably was not required to rely upon substantial evidence in light of Ms. Abdul-Rahman's failure to exercise her right to a hearing."[60] The Board provides no legal authority to support that contention, and, aside from its passing remark, does not develop that argument further. The Board decided to annul Ms. Abdul-Rahman's license. An annulment qualifies as a "case decision" as defined by 29 Del. C. § 10102(3). 29 Del. C. § 10142 governs this Court's review of case decisions, and requires the Court to determine if the Board's decision "was supported by substantial evidence on the record before the agency."[61] Accordingly, the Court can affirm the Board's decision only if the record contains substantial evidence to support the Board's decision.

The Board next urges the Court to afford deference to the Board's "experience and expertise," which it relied upon to conclude that "Ms. Abdul-Rahman did not hold a legitimate nursing degree."[62] Certainly, the Board may rely upon its experience to determine if a given nursing program meets the requisite educational

---

[60] Id. at 17.

[61] See Agbemehia, 2024 WL 66047, at *6.

[62] Answering Br. at 20-21.

14

standards.[63]  In this case, however, the record does not support the Board ever making that finding.  That finding seems, at best, to be implicit in the Board's conclusion that Ms. Abdul-Rahman obtained a fraudulent degree solely based on the fact that the school she attended produced other fraudulent degrees during some undefined timeframe.  Asking the Court to affirm that finding, absent any application of the Board's experience and expertise for the Court to consult, requires the Court to assume the logical reasoning upon which the Board relied.  The Board's reasoning may be supported by substantial evidence – however, because the Board has not provided its reasoning, the Court cannot make that determination.[64]

As part of the record, the Board provided the Court a copy of Ms. Abdul-Rahman's licensure application, including her transcript.[65]  Unlike the Board, the Court does not possess extensive experience and expertise in evaluating transcripts created by nursing programs.[66]  Without some guidance and engagement from the

---

[63] See Agbemehia, 2024 WL 66047, at *1.

[64] See 29 Del. C. § 10128(b) ("Every case decision of any agency shall be incorporated in a final order which shall include, where appropriate: (1) a brief summary of the evidence; (2) findings of fact based upon the evidence; (3) conclusions of law; (4) any other conclusions required by law of the agency; and (5) a concise statement of the agency's determination or action on the case.").

[65] App. to Answering Br. at A13.

[66] In Agbemehia, the Board provided a substantive review of the appellant's transcript.  See Agbemehia, 2024 WL 66047, at *7.  The Board highlighted a substantial number of credits the program permitted the appellant to transfer and the relatively short time frame the appellant required to complete his degree.  The posture of that case required the Board to make a more thorough showing, as the appellant made a timely request for a hearing to present evidence and contest the annulment of his license.  Nevertheless, the stark difference in evidence presented in

15

Board, the Court cannot determine if Ms. Abdul-Rahman's transcript – or anything else about her licensure application – appears fraudulent.[67]  Further, as the Board found Ms. Abdul-Rahman knowingly committed fraud, the record must reflect some basis for that conclusion by the Board beyond the name of the school she attended and the misdeeds of some of her peers.  Accordingly, the Court finds it appropriate to remand this matter to the Board for the purpose of further developing the record regarding Ms. Abdul-Rahman's license annulment.[68]

## V.  Conclusion

29 Del. C. § 10131(c) required the Board to afford Ms. Abdul-Rahman at least ten days to request a hearing to contest the annulment of her license.  Ms. Abdul-Rahman did not request a hearing within ten days.  She did not provide any evidence to overcome the presumption she received notice via letter properly addressed to her at a location where she received other correspondence from the Board.  The Board's decision to deny Ms. Abdul-Rahman a hearing is **AFFIRMED**.  The record provided

---

Agbemehia – including the Board's actual basis for concluding his degree appeared fraudulent – compared to what the Board has provided in Ms. Abdul-Rahman's case showcases the difficulty in attempting to understand the Board's rationale absent some articulation by the Board.

[67] See Kreshtool v. Delmarva Power & Light Co., 310 A.2d 649, 652 (Del. Super. 1973) (noting both that "[t]he record must clearly show the basis on which the administrative agency acted in order that its exercise of discretion may be properly reviewed," and "the reviewing court may not affirm the decision of an agency by supplying entirely different factual grounds.").

[68] See Imhof v. Delaware Bd. of Med. Licensure & Discipline, 2022 WL 247464, at *8 (Del. Super. Jan. 26, 2022) (partially remanding an agency's case decision because the case decision failed to provide a substantive record as to one of its findings).

16

by the Board, however, does not provide the Court with enough evidence to conclude the Board's decision relied upon substantial evidence and was free of legal error. Thus, this matter is **REMANDED** to the Board to further develop the record as to its decision to annul Ms. Abdul-Rahman's nursing license.

     **IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge