87 N.J. Super. 318 (1965)
209 A.2d 343
FIRST SAVINGS & LOAN ASSOCIATION OF EAST PATERSON, APPELLANT,
v.
CHARLES R. HOWELL, COMMISSIONER OF BANKING AND INSURANCE OF NEW JERSEY, AND FIRST SAVINGS & LOAN ASSOCIATION OF FAIR LAWN, BERGEN COUNTY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1965.
Decided April 20, 1965.
*320 Before Judges FOLEY, KILKENNY and COLLESTER.
Mr. Leonard I. Garth argued the cause for appellant (Messrs. Cole, Berman & Garth, attorneys; Mr. Ross B. Abrash and Mr. William L. Kattak, on the brief).
Mr. Morris Yamner, Deputy Attorney General, argued the cause for respondent Charles R. Howell, Commissioner of Banking and Insurance of New Jersey (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. George A. Brown argued the cause for respondent First Savings & Loan Association of Fair Lawn, Bergen County (Messrs. Morrison, Lloyd & Griggs, attorneys; Mr. August Schedler, of counsel).
*321 The opinion of the court was delivered by KILKENNY, J.A.D.
On April 20, 1964 the Commissioner of Banking and Insurance, acting under N.J.S.A. 17:12B-26, approved an application by First Savings & Loan Association of Fair Lawn (hereinafter "Fair Lawn") to establish and maintain a branch office "at the southeast corner of Broadway (New Jersey State Highway Route 4) and Plaza Road, Fair Lawn, Bergen County New Jersey" First Savings & Loan Association of East Paterson (hereinafter "East Paterson") opposed the application, offered evidence in support of its opposition at the public hearings conducted by the Commissioner, and prosecutes this appeal from his final decision.
Before approving a branch office, N.J.S.A. 17:12B-26(2) requires a determination by the Commissioner that:
"(a) the association and the proposed branch meet all of the requirements of sections 25 and 26 of this act, and
(b) the establishment and operation of such branch office is in the public interest and will be of benefit to the area served by such branch, and that
(c) such branch office may be established without undue injury to any other association in the area in which it is proposed to locate such branch office, and that
(d) conditions in the area to be served, afford reasonable promise of successful operation."
The Commissioner expressly determined the existence of each of these four factors in favor of Fair Lawn's application.
We note at the outset the limited scope of our appellate review of administrative findings. We are generally limited to determining whether the factual findings are supported by substantial evidence. We have the power and the duty to assay the facts, but ordinarily only to determine whether the evidence before the administrative body or officer furnished a reasonable basis for its or his factual conclusions and action. It is not the function of the appellate tribunal to substitute its independent judgment for that of the administrative body or officer where there may exist a mere difference *322 of opinion concerning the evidential persuasiveness of relevant testimony. If the record discloses substantial evidence to support factual findings of the administrative body or officer, a presumption of reasonableness attaches to its or his findings. Re Application of Millburn-Short Hills Bank, 59 N.J. Super. 470, 473-474 (App. Div. 1959); Elizabeth Federal Savings & Loan Ass'n v. Howell, 24 N.J. 488, 508 (1957); Re Application of State Bank of Plainfield, 61 N.J. Super. 150, 158 (App. Div. 1960). However, the applicant for approval has the initial burden of establishing that the statutory requirements were met. Application of Howard Savings Institution of Newark, 32 N.J. 29, 40 (1960).
East Paterson's main contention is that there is no substantial, competent and relevant evidence in the record to support the Commissioner's finding that "conditions in the area to be served afford a reasonable promise of successful operation." East Paterson maintains that the Commissioner's finding as to this statutory requirement was erroneously based upon unwarranted criteria and assumptions of fact lacking evidential support. East Paterson also urges that the Commissioner has disregarded the only competent evidence of reasonably anticipated annual income and projected annual expense of this branch office operation, and that this evidence demonstrates that there is no reasonable promise of successful operation of this branch office for the next ten years.
The Commissioner noted in his findings that Fair Lawn has been a successful operation since its incorporation in 1927. Its main office is located at 14-01 River Road, Fair Lawn. Besides the branch office in issue, it has three other branch offices located at (1) 200 Fair Lawn Avenue, Fair Lawn, (2) S-134 Far View Avenue, Paramus, and (3) Space 0-6 Building O, Bergen Mall, all in Bergen County. The accounts of its members are insured up to $10,000 for each member by the Federal Savings and Loan Insurance Corporation. It has enjoyed a rapid growth, especially during the five years ending December 31, 1963, its capital increasing $33,000,000 during that period. As of December 31, 1963 *323 its assets were $86,500,000, its capital accounts $75,700,000, and its reserve and undivided profits accounts were about $5,700,000. As of that date it had over 33,000 savings members and about 5600 borrowing members. Its last declared dividend was at the rate of 4% per annum. The foregoing figures represent the total operations of the main office and three branch offices combined. Its reports do not disclose the separate operations of each branch office.
The Commissioner also noted East Paterson's successful operation. We find no need to recite herein the details thereof. The Commissioner stressed that the managements of both applicant and objector "have been of high caliber and their public services in the thrift savings and home finance field have been outstanding."
However, Fair Lawn's past performance at other locations is not per se an adequate basis for a determination that "conditions in the area to be served" by the new branch office "afford reasonable promise of successful operation."
Fair Lawn owns the vacant land upon which the new branch office would be located, having purchased it at a cost of about $225,000 on November 15, 1963, just prior to application on November 27, 1963 for approval of a branch office there. The plot has a frontage of 200 feet along Broadway and is irregularly shaped, having a depth of 36 feet on one side and 170 feet on the other side. It is subject to 20-foot front and side yard setbacks. There is an irregular strip appended to the larger part of the property. We were advised that no permanent structure has as yet been erected upon the land, but Fair Lawn has been operating a branch office at the site from a trailer placed thereon. East Paterson's motion for a stay was heard by us on June 29, 1964 and denied.
The area to be serviced by this branch office is described as being bounded by the Erie-Lackawanna railroad on the west, the Garden State Parkway on the south and Saddle River on the east. On the north, there is no such defined natural boundary, but Fair Lawn asserts that the area extends northward into the borough of Fair Lawn "such a distance as may *324 be convenient to any present or prospective members. Morlot Avenue was considered as the northerly boundary by `Fair Lawn.'"
Fair Lawn's executive vice-president, Robert T. Holland, testified that a house count made by him of the area south of Morlot Avenue, taken from an Aeroflex survey dated April 4, 1962, available at the municipal building, indicated approximately 3,272 homes in this area. He used the term "approximately" because "there were some buildings in that survey that looked like houses but later I found out could have been commercial buildings." Testimony on behalf of East Paterson showed that there were 93 businesses in Fair Lawn on both sides of Route 4, including a Shop-Rite supermarket opposite the location of the proposed branch office. Route 4 is a heavily traveled main highway which extends from the George Washington Bridge in a general westerly direction to Paterson. Both East Paterson and Fair Lawn are in Bergen County. Thus, the area is generally devoted to residential and business uses.
Fair Lawn's main office is approximately 2.2 miles from this new branch office, and its other Fair Lawn branch about 1.4 miles. East Paterson's main office is seven-tenths of a mile from the proposed branch office and on the same southerly side of Broadway (Route 4). A branch of the Fairlawn-Radburn Trust Company is also located on Broadway, only a short distance away from the branch office in issue. This banking institution has not objected to the new branch office.
There is a vagueness and uncertainty in the record as to the cost and use of the building to be erected on the site. The Commissioner refers to these factors in his decision as follows:
"No definite figure has been reached by applicant as to the ultimate cost of the building to be erected on this site, but it was estimated that such expenditure would run up to $1,250,000."
The Commissioner noted testimony on behalf of Fair Lawn as to its "pressing need for additional working space to properly *325 conduct its burgeoning thrift saving and mortgage lending business from the standpoint of both the public and office personnel," and that Fair Lawn's president and executive vice-president deemed the proposed site "to be the best available." But, again, no details were submitted as to the use to which any new building at the branch office site would be put. The Commissioner only stated as to this aspect:
"Appellant [sic] frankly stated that it proposed eventually to transfer many of its present main office functions to the new proposed branch office building and that its building plans would be so designed. And such a procedure would not, in our opinion, be contrary to the exercise of sound business judgment by applicant's board of directors."
The difficulty with this rationale is its total reliance upon the "sound business judgment" of Fair Lawn's board of directors in futuro without any proof in the record as to present plans. We inquired at oral argument as to whether there were any existing plans and specifications for the proposed building, or cost estimates, or proposed uses for whatever building might be erected on this land. We received a negative answer. As we see it, one cannot begin to evaluate "reasonable promise of successful operation" without having some idea of the expense of the operation as compared with reasonably anticipated income therefrom. It is one thing to carry on a savings and loan business from a "trailer" and quite a different thing to carry on the same business in a $1,250,000 building with its much greater operating expenses. We may assume that a $225,000 parcel of land will not be used indefinitely for the limited "trailer" operation now being carried on at the site. Yet, at oral argument, we were told by Fair Lawn's attorney that no building contract has been entered into and, although almost a year has expired since the Commissioner's decision and our denial of a stay, only a contract for the purchase of another trailer has been entered into.
Associated with this lack of specificity as to the building proposed to be erected and the expense of its operation, there is no finding by the Commissioner as to the reasonably anticipated *326 income and operating expenses from which a conclusion could be drawn that within the reasonably foreseeable future this branch office will show any net return, or even reach a "break even" position. The basis of the Commissioner's decision seems to be that Fair Lawn has operated successfully in the past and, therefore, can be depended upon to operate successfully at this new branch office. That may very well be true, but we do not regard a determination based on that rationalization alone a compliance with the statutory requirement. There must be more substantial evidence in the record to support a determination that conditions in the area of the proposed branch office "afford reasonable promise of successful operation."
There was testimony by Dr. Flink, a qualified expert witness for East Paterson, that the proposed branch office would not reach a "break even" point for at least ten years and would operate at a substantial annual loss during the intervening period. Assuming an $800,000 building upon the site, Dr. Flink estimated annual operating expenses at approximately $131,000. It was his view that even if the annual operating expenses of this branch were only $100,000, it would require a capital of $10,000,000 in this branch office before the association would begin to operate profitably. This computation was based upon a continued dividend rate of 4% and an average income rate of 5 1/2% on capital. The differential of 1 1/2% would provide a gross income of $150,000 on a capital of $10,000,000.
Dr. Flink's estimate of the financial growth of this branch office was that it might have deposits of as much as 2 1/2 to 3 million dollars in the first year of its existence, or the $2,000,000 estimated by Fair Lawn's officers, but a substantial part of this would be by transfers from Fair Lawn's other offices. After that first year, Dr. Flink estimated that deposits would amount to approximately $750,000 annually. He based this computation on testimony by Fair Lawn's officers that the entire area embraced by Fair Lawn's operations would generate between $3,500,000 and $4,000,000 annually *327 in new deposits, but reasoned that deposits in East Paterson and other institutions would reduce Fair Lawn's potential therein to $2,500,000. This, in turn, would conceivably be shared by all of Fair Lawn's offices, so that this branch office might obtain 15 to 20 per cent thereof, or even 30% of the $2,500,000, thus adding up to his figure of $750,000.
On the other hand, Fair Lawn's officers estimated deposits of $2,000,000 the first year in this new branch and a prospective growth of $2,000,000 in each year thereafter.
The Commissioner has made no findings of fact on this critical issue as to anticipated income and expenses in the business operations of this branch office. East Paterson's expert stated not only his opinion but his reasons therefor. Fair Lawn relied solely on the testimony of its bank officers. Their estimate of $2,000,000 annually is not fortified with any statement of their reasons therefor. Nor have they controverted adequately the testimony of Dr. Flink as to the estimated savings of $4,000,000 annually from the entire area of Fair Lawn's operation and the amount that might be reasonably anticipated as flowing from operations at this branch office. And, too, as noted above, there is no sound basis for calculating operating expenses until there is more specific information as to the cost and use of any proposed building on the land. Mere generalizations based upon Fair Lawn's past performance are not enough, especially since there was no breakdown of figures as to its particular branch operations.
Without more substantial, competent and relevant evidence than that which appears in the record before us, and more specific findings with reference to the evidence, we cannot conclude that the Commissioner was correct in holding that "conditions in the area to be served afford reasonable promise of successful operation." A determination of this statutorily required factor must be based upon facts and reasonably calculated figures supporting such a conclusion.
*328 Argument is made by Fair Lawn that it could move its main office to this site even without approval of the Commissioner, because it would be in the same municipality. N.J.S.A. 17:12B-40. We need not pursue that argument because that right is not being challenged here. Fair Lawn also contends that it could erect a building at this site to satisfy the spatial needs of its existing main office and three branch offices and would not need the Commissioner's approval for this purpose, so long as it did not operate a branch office there. Again, we are not concerned with that contention because that is not the proposal under review. The question is whether it may establish a "branch office" there and carry on its regular business as a savings and loan association at this new location.
East Paterson also argues that the Commissioner erred in not considering the existence of the Fairlawn-Radburn Trust Company branch in the area in making his findings. True, the decision makes no mention of this nearby banking institution, but we do not conclude from his failure to mention it that the Commissioner did not consider the fact of its existence. Perhaps it would have been better to make note of it, particularly in estimating projected income.
The matter is remanded to the Commissioner of Banking and Insurance for further proofs, and such findings thereon as may be warranted, on the issue of whether "conditions in the area to be served" by this branch office "afford reasonable promise of successful operation." N.J.S.A. 17:12B-26(2)(d). We do not retain jurisdiction. Remand.