656 A.2d 430

IN THE MATTER OF THE PETITION OF THE BOARD OF EDU-
CATION OF THE TOWNSHIP OF WAYNE, PETITIONER–AP-
PELLANT, v. ARLENE KRAFT, JOHN AND ANGELA
O'KEEFE, WARREN AND JUNE BROOKS, PATRICK AND
ROSEANN MORIARITY, DR. DOUGLAS AND MRS. STEPHA-
NIE GLAZER, RICHARD AND APPY EDEN, FRANK AND
CHRISTINE DEGARCIA, MR. AND MRS. ROLAND TULINO,
MARC AND LINDA FISHMAN, GEORGE AND CARLA FATTAL,
STEVEN AND MARY POTTER, MR. AND MRS. CHRISTOPHER
MARRA, ALAN AND SANDY BURTON, MR. AND MRS. WAYNE
R. REPPA, DR. AND MRS. ALAN TELL, DAVID GOLUB, JO-
SEPH AND FONG–JIAO CHEN, MICHAEL W. AND PATRICIA
A. LAVULLO, RESPONDENTS–RESPONDENTS.

Argued February 15, 1995—Decided April 24, 1995.

*Stephen R. Fogarty* argued the cause for appellant (*Fogarty.& Hara*, attorneys; *Gary P. Hall*, of counsel and on the brief).

*Charles J. Mysak* argued the cause for respondents.

*Kim Chapman*, Associate Counsel, argued the cause for *amicus curiae*, New Jersey School Boards Association (*Susan E. Galante*, Director, Legal Department; *Donna M. Kaye*, Associate Counsel, on the letter brief).

*Arlene Goldfus Lutz*, Deputy Attorney General, submitted a letter in lieu of brief on behalf of respondent State Board of

Education (*Deborah T. Poritz,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

The underlying issue is whether a walkway is a public thoroughfare within the meaning of *N.J.S.A.* 18A:39–1 and *N.J.A.C.* 6:21–1.3 for the purpose of calculating whether the residences of students who use the walkway are more than two miles from their school. If the walkway is not public, defendant, the Board of Education of the Township of Wayne (the local board), must bus the students to the Schuyler–Colfax School. The local board petitioned the Commissioner of Education for a declaratory judgment that the walkway, known as the Smith Lane extension, is a public thoroughfare. The Commissioner referred the matter to the Office of Administrative Law (OAL). After a contested hearing, an administrative law judge (ALJ) concluded that the walkway is a public thoroughfare and that the students can use it safely. The Commissioner agreed with the ALJ, and the State Board of Education (State Board) affirmed the Commissioner's decision. The Appellate Division reversed because it disagreed with the State Board's conclusion that the walkway is safe. 274 *N.J.Super.* 211, 226, 643 *A.*2d 1029 (1994). We granted the local board's petition for certification. 138 *N.J.* 267, 649 *A.*2d 1287 (1994). Finding that the Appellate Division should have deferred to the State Board's finding that the walkway is safe, we reverse that court's judgment and reinstate the decision of the State Board.

I

This appeal arises out of the local board's decision not to bus certain middle-school students to and from the Schuyler–Colfax School. Concerning busing, *N.J.S.A.* 18A:39–1 formerly provided:

Whenever in any district there are pupils residing remote from any schoolhouse, the board of education of the district may make rules and contracts for the

transportation of such pupils to and from school, including the transportation of school pupils to and from school other than a public school, except such school as is operated for profit in whole or in part.

Interpreting the statute, *N.J.A.C.* 6:21–1.3 provides:

(a) The words "remote from the schoolhouse" shall mean beyond 2½ miles for high school pupils (grades 9 through 12) and beyond two miles for elementary pupils (grades kindergarten through eight), except for educationally handicapped pupils. (b) For the purpose of determining remoteness in connection with pupil transportation, measurement shall be made to by the shortest route along public roadways or public walkways from the entrance of the pupil's residence nearest such public roadway or public walkway to the nearest public entrance of the assigned school.

On July 1, 1990, the Legislature amended *N.J.S.A.* 18A:39–1 to provide:

Whenever in any district there are elementary school pupils who live more than two miles from their public school of attendance or secondary school pupils who live more than 2½ miles from their public school of attendance, the district shall provide transportation to and from school for these pupils.

[*L.* 1990, *c.* 52, § 50.]

Although the ALJ referred to the statute in its former form, the reference is unimportant. The underlying issue continues to be whether the affected students live more than two miles from the school within the meaning of the regulatory structure.

By including Smith Lane and a walkway, denominated the "Smith Lane extension walkway," within the "remoteness" calculation, the local and state officials concluded that the students were not more than two miles "remote" from the school. Originally, respondents, the parents of the students, argued not only that the walkway was unsafe, but that Smith Lane should be excluded because it was a private, not a public, roadway. Although the Appellate Division concluded that "the decision to include the Smith Lane extension walkway as a 'public walkway' was not correct for safety reasons," 274 *N.J.Super.* at 226, 643 *A.*2d 1029, it also concluded that the "decision to include Smith Lane as a 'public roadway' for purposes of measuring remoteness was proper." *Ibid.* Respondents did not cross-appeal from the latter conclusion. The dispositive issue before us is whether the Appellate Division should have deferred to the State Board's determination that the walkway could be included in the remoteness deter-

mination because it "is safe and well-maintained as any other public sidewalk in Wayne Township...."

In resolving that issue, we appreciate the understandable, even laudable, concerns of respondents, the students' parents, for the safety of their children. We also appreciate the difficult decisions that school board officials must make in discharging their responsibilities to those students and the general public.

The following summary, drawn from the hearing before the ALJ, suffices for our purposes. The Smith Lane extension walkway, which is one of thirty-four school paths maintained by Wayne Township, is approximately five-feet wide and five-hundred-feet long. It begins at Smith Lane and ends at the Theunis Dey Elementary School. Private homes border the walkway on one side, and the Theunis Dey ballfield borders the other side.

As described by Gary Peatick, the school district transportation supervisor, the walkway is a paved pathway. It "has a slight grade, and at one point traverses a wooded area," which is secluded from public view for forty to fifty feet. Wayne Township maintains the walkway and removes snow and ice. At night, the ballfield security lamps illuminate the walkway. According to Eric Ernst, the assistant transportation supervisor, children are visible "for the majority of time they are on the walkway," and the school crossing guard on nearby Jackson Avenue could hear any cries of distress. Approximately eighty students use the walkway to travel to and from their homes and school. Other children use the walkway for recreational purposes, such as visiting friends.

Marilyn Mysak was the sole witness who testified for respondents. Although Mrs. Mysak has observed debris on the walkway, she acknowledged that between her observations the debris had been removed. She asserted that the walkway is unsafe because it is steep and is bordered by crevices. The ALJ, after reviewing photographs of the walkway, rejected that assertion. Mrs. Mysak also testified variously that no one could hear cries from the walkway of children in distress, but that from her backyard she could hear children playing on the walkway. She

was concerned that portions of the walkway are concealed from public view, a concern that the ALJ discounted because children would use the walkway during specific times and generally while walking in groups. The ALJ likewise discounted Mrs. Mysak's concerns about teenagers who gather on the walkway and drink beer at night, because those gatherings occur after school hours.

The only other evidence adduced by respondents was a certification from a former assistant superintendent of the school district, who believed that the local board should not change its former policy of excluding the walkway when determining whether students live more than two miles from the Schuyler–Colfax school.

After considering all the evidence, the ALJ concluded that the Smith Lane extension walkway is public and "presents no greater risk to children walking back and forth to school than does any other sidewalk in the Township." In reaching that conclusion, the ALJ noted that "[t]here is nothing on the record, such as police or accident reports, to show that a hazard exists." The Commissioner affirmed the ALJ's decision, and the State Board affirmed the decision of the Commissioner.

In reversing, the Appellate Division relied on *Board of Educ. v. Bailey*, 1984 *S.L.D.* 1165 (St.Bd. of Educ.1984), which it read as holding that "isolated footpaths" are necessarily unsafe. 274 *N.J.Super.* at 225–26, 643 *A.*2d 1029. As the Commissioner noted in the instant case, however, the footpaths in *Bailey* crossed a county park "where snow and ice were not removed, no public thoroughfare linked the pathways in the park to the rest of the community ... and where the park was near an urban area, creating a potential danger of attack."

■ Contrary to the Appellate Division's interpretation, *Bailey* does not compel the conclusion that merely because some part of a pathway is isolated, the pathway is unsafe as a matter of law. Whether a walkway is safe depends on the surrounding facts. For example, in *Mangieri v. Board of Educ.*, 1991 *S.L.D.* 69 (St.Bd. of Educ.1991), the Commissioner concluded that a walkway

across railroad tracks was safe. In reaching that conclusion, the Commissioner relied on the ALJ's finding that local officials took "reasonable precautions to protect the safety of children, including arranging for a crossing guard at peak hours, limiting access when school is not in session, and grading and maintaining the walkway." 1991 *S.L.D.* 58, 63 (1990).

## II

A reviewing court should defer to the findings of an administrative agency's findings if those findings are based on sufficient credible evidence in the record as a whole. *Dennery v. Board of Educ.*, 131 *N.J.* 626, 641, 622 *A*.2d 858 (1993); *Henry v. Rahway State Prison*, 81 *N.J.* 571, 579–80, 410 *A*.2d 686 (1980). *See generally* Kenneth C. Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 11.2 (3d ed. 1994) (discussing "substantial evidence test").

We recently reexamined judicial review of fact findings by the Commissioner and State Board in *Dennery*. In that case, the State Board affirmed the Commissioner's decision that the plaintiff, a tenured high school guidance counselor, could not transfer her tenure rights under an "educational services certificate" to a new position as "class supervisor." The Appellate Division reversed, 251 *N.J.Super*. 144, 597 *A*.2d 559 (1991), determining that the guidance counselor and class supervisor positions overlapped to such an extent that the plaintiff could transfer her tenure rights. We reversed, relying on the rule that a reviewing court must accept an agency's factual determinations unless those determinations are not supported by substantial credible evidence in the record. 131 *N.J.* at 641, 622 *A*.2d 858. Our review led us to conclude that the record supported the State Board's determination that "the newly-created position of class supervisor required the performance of additional duties and tasks and that the position was not so substantially similar to Dennery's previous position as a guidance counselor." *Id.* at 641–42, 622 *A*.2d 858.

■ As in *Dennery*, we conclude that the Appellate Division exceeded the scope of judicial review by failing to defer to the State Board's finding that the Smith Lane extension walkway is as safe as any other sidewalk in the township.

■ The Appellate Division rejected that finding, stating that [h]ere, the decision of the agency is entirely inconsistent with its long-standing common sense proposition that isolated pathways should not be utilized for determining remoteness for safety reasons and that children are entitled to safe passage under the auspices of a responsible government entity.

... Under the circumstances, it is clear to us that the decision under review was so wide of the mark that our intervention is required.

[274 *N.J.Super.* at 227, 643 *A.*2d 1029].

In essence, the Appellate Division concluded that because the record indicated that one section of the five-hundred foot walkway traverses a wooded area, the walkway is necessarily unsafe. Thus, the Appellate Division's review of the record led it to a conclusion different from that of the State Board. Mere disagreement with an agency's conclusion, however, does not permit a reviewing court to reject that conclusion. *Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 587, 538 *A.*2d 794 (1988); *Goodman v. London Metals Exch., Inc.*, 86 *N.J.* 19, 28–29, 429 *A.*2d 341 (1981).

Like the Appellate Division, we recognize the relevance of student safety in determining whether a walkway may be included in calculating remoteness. *See Mangieri, supra,* 1991 *S.L.D.* at 72; *Bailey, supra,* 1984 *S.L.D.* at 1166. Here, the local and state school officials evinced concern for the safety of children traveling to school on the Smith Lane walkway, but determined that children using the walkway are safe. The record amply supports their determination.

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WILENTZ, and Justices HANDLER, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.