·664 A.2d 505

SSI MEDICAL SERVICES, INC., APPELLANT, v. STATE OF NEW
JERSEY, DEPARTMENT OF HUMAN SERVICES, DIVISION OF
MEDICAL ASSISTANCE AND HEALTH SERVICES, RESPON-
DENT.

Superior Court of New Jersey
Appellate Division

Argued May 2, 1995—Decided September 14, 1995.

Before Judges MICHELS, STERN and HUMPHREYS.

*William S. Greenberg* argued the cause for appellant (*McCarter & English,* attorneys; *Mr. Greenberg,* of counsel; *Joseph C. O'Keefe,* on the brief; *Mary Ann Mullaney,* on the reply brief).

*John K. Worthington,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General, attorney for respondent; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Worthington,* on the brief).

The opinion of the court was delivered by

HUMPHREYS, J.S.C. (temporarily assigned).

The New Jersey Division of Medical Assistance and Health Services ("DMAHS") has a policy of requiring a higher standard of proof of the timely filing of a Medicaid claim than would be required in "general business practice." The Acting Director of DMAHS applied that policy and rejected a recommendation by Jaynee LaVecchia, Chief Administrative Law Judge ("CALJ"), that certain claims of plaintiff SSI Medical Services, Inc. ("SSI") be allowed. The Acting Director followed the recommendation of the CALJ that other claims of plaintiff be rejected. Plaintiff appeals the Acting Director's decision.

After a thorough review of the record and the briefs and arguments of counsel, we agree with the findings and recommendations of the CALJ in her comprehensive and well stated written opinion of March 24, 1994. We specifically do not agree with the DMAHS's policy of requiring a higher standard of proof. We add the following with respect to the claims which the CALJ recommended be allowed.

I

The issue in this case is whether plaintiff submitted the claims in a timely manner. The CALJ, after hearing the witnesses and reviewing the evidence, found that the claims listed in Attachment A to her opinion had not been timely submitted because there had been no timely follow up inquiry by plaintiff. The CALJ found that the claims listed in Attachment B to her opinion should be allowed. Plaintiff had made a timely inquiry with respect to the Attachment B claims.

The Acting Director stated:

The Director REVERSES the recommended decision on the Attachment–B claims because he disagrees with the Chief ALJ's findings and conclusions for two reasons.

The first reason is that the policy of the New Jersey Medicaid program has been that a provider of service must present "documentary evidence of filing" of the claims with the fiscal agent, *Jewish Hospital and Rehabilitation Center v. DMAHS*, 92 N.J.A.R.2d (DMA) 53, 58 [1992 WL 279813] (1992). As indicated in

the holding of the above-cited case, this Division has historically required a higher standard for proof of timely filing of a claim than the general business practice with regard to processing and mailing set-forth in the line of cases on which the Chief ALJ relied in reaching her decision.

The reason for requiring a higher standard of proof concerning the timely filing of a Medicaid claim is two-fold. The first reason, which is not an issue in this case, is to protect the integrity of the Medicaid program which pays providers of service millions of dollars in both State and Federal funds. The second reason, which is in issue in this case, is to avoid a disallowance of the federal share of the Medicaid payments because a claim was not filed within twelve months from the date of service (42 CFR 447.45(d)) and to comply with the State legislative mandate set-forth in N.J.S.A. 30:4D-7, that the Commissioner maximize federal funding.

The Director also rejects the Chief ALJ's recommendation to process the Attachment-B claims for payment because the Petitioner's proofs do not satisfy the requirements to create the presumption of receipt as set-forth in the line of cases relied on by the Chief ALJ.

The Acting Director also concluded that ample proof had been presented to rebut any presumption of receipt. In addition, he said that contrary to the CALJ's finding, a claimant had only one year, not one year and ninety days to submit a claim. Finally, he concluded that the evidence was not sufficient to support a conclusion that the "Medicaid claims processing unit at Prudential was a 'black hole' that routinely lost claims."

II

We do not agree with the Acting Director that a Medicaid claimant must meet a higher standard of proof. We are mindful that public money is involved and care must be taken to protect against corruption, fraud and improvidence. However, there is no indication in this record of any corruption, fraud or improvidence. The Acting Director admitted in his opinion that the integrity of the Medicaid Program is not in issue here.

Those who have valid claims against the government ordinarily need not bear a heavier burden in proving those claims than claimants against private parties. Justice Holmes' oft quoted statement that "[m]en must turn square corners when they deal with the Government," *Rock Island, A. & L.R. Co. v. United States,* 254 *U.S.* 141, 143, 41 *S.Ct.* 55, 56, 65 *L.Ed.* 188, 189 (1920),

has in recent times been transformed into "[i]n dealing with the public, government must 'turn square corners.'" *F.M.C. Stores Co. v. Borough of Morris Plains,* 100 *N.J.* 418, 426, 495 *A.*2d 1313 (1985) (citation omitted). Furthermore, in dealings with the public, government may not "exploit litigational or bargaining advantages that might otherwise be available to private citizens." *W.V. Pangborne & Co. v. New Jersey Dep't of Transp.,* 116 *N.J.* 543, 561, 562 *A.*2d 222 (1989). Government must also "adhere to strict standards in its contractual dealings." *Id.* at 562, 562 *A.*2d 222. The DMAHS's "policy" that those who submit claims to it must adhere to a higher standard of proof does not conform to modern concepts of the duty of government to the public which it serves.

The DMAHS's policy is also contrary to the general rule that the traditional preponderance of the evidence standard applies to the vast majority of administrative agency matters. 2 Davis & Pierce, Administrative Law Treatise § 10.7 (3d ed. 1994); *Fairfax Hospital Ass'n, Inc. v. Califano,* 585 *F.*2d 602, 611–12 (4th Cir. 1978). *See also Bender v. Clark,* 744 *F.*2d 1424 (10th Cir.1984) (Government's interest in implementing congressional leasing policy on federal lands did not warrant placing a higher burden of proof on a challenger to a government determination regarding that land). Exceptions are those rare cases in which the Constitution or a statute requires a higher standard. *See* Administrative Law Treatise, *supra,* at § 10.7. No such constitutional or statutory requirement is present here. Nor has the agency implemented its policy by adopting a rule or regulation thereby giving fair notice of its policy to those who file claims with it. *See Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 331, 478 *A.*2d 742 (1984) (general administrative policies should be implemented by rules, not individual adjudications).

Furthermore, we understand from oral argument that federal funding will not be jeopardized if we uphold the plaintiff's claims. A Medicaid agency is permitted to "make payments at any time in accordance with a court order, to carry out hearing decisions or

agency corrective actions taken to resolve a dispute...." 42 C.F.R. § 447.45(d)(4)(iv) (1990).

Thus, resolution of the factual issues here must be governed by the usual standards of proof. If the proofs establish by a preponderance of the evidence that plaintiff submitted these claims in a timely fashion, then the claims should be processed for payment.

## III

The CALJ conducted a plenary hearing. In her written opinion of March 24, 1994, she made a thorough analysis of the testimony and documentary evidence. She concluded that SSI mailed the claims to Prudential and that the mailing raised a presumption of receipt.

The evidence clearly merited the CALJ's finding that the claim forms in question were mailed by plaintiff to Prudential. The following evidence was presented by testimony and affidavits. The Medicaid claim forms were prepared by Renee Mills, an employee of plaintiff. Photocopies of the forms were made for plaintiff's files and the originals placed in a pile for submission to the fiscal agent of DMAHS. After some fifty to seventy-five forms were collected, Ms. Mills personally addressed the mailing envelopes. She included plaintiff's return address and the address for delivery. The forms were then deposited in plaintiff's mail baskets. Plaintiff's mail room clerks were instructed to collect mail from each of the mail baskets on a daily basis. Once collected, the individual pieces of mail were stamped with the appropriate amount of postage using plaintiff's postage meter. Each envelope was then placed in a bin obtained by plaintiff from the U.S. Postal Service. Every weekday, other than federal holidays, a U.S. Postal Service employee would arrive at plaintiff's offices in the early evening and collect the mail for delivery. During Ms. Mills' five years with plaintiff, no claim form had been returned to her by the U.S. Postal Service for any reason.

Ms. Mills asserted that Prudential frequently misplaced submitted claim forms and had "poor document management." She said

that sometimes plaintiff had to wait a few months after each submission and then, if payment had not been received, resubmit the forms under the assumption that Prudential had lost the original submission. She said that Prudential's inefficiencies were such that claim forms often "had to be resubmitted more than once, and sometimes several months expired before SSI could determine whether it was necessary for an additional copy of a claim form to again be submitted."

These problems were "largely cured," she said, when UNISYS succeeded Prudential as the fiscal agent. She said that Prudential had a "chronic problem of losing submitted claim forms" and that some UNISYS employees "have even referred to Prudential as a 'black hole' with respect to its ability to properly process claims information."

Ms. Mills further asserted that the claim forms at issue have submission dates which were "relatively evenly scattered throughout the year." This, she said, refutes any inference that plaintiff failed to submit one envelope with a substantial group of claim forms in it. Ms. Mills also said that "DMAHS has accepted and paid the vast majority of the claim forms that SSI submitted during each month in 1991, thus indicating that Prudential in fact received the claim forms that DMAHS is now disputing as being untimely filed." Ms. Mills also submitted claim forms to other states. She said that only in New Jersey was the resubmission of claim forms "consistently and regularly" requested.

The CALJ found that the claims in Attachment B had "a timely date of original submission" within a month or two following the period of service. The CALJ found "documentary evidence of a timely original billing completed and mailed at SSI in accordance with office procedure and custom." In addition, each of the claims in Attachment B has a "resubmitted billing which occurred within either the initial twelve month period, or during the additional ninety day period allowed for follow-up inquiry pursuant to *N.J.A.C.* 10:49–7.2(g)."

■■■■ Proof of mailing can be established by evidence of habit or routine practice. *See* Biunno, *Current N.J. Rules of Evidence,* Comment 1 on *N.J.R.E.* 406(a) (1994). Such evidence need not be corroborated. *Ibid.* Evidence of specific instances of conduct may prove habit or routine practice if there is a sufficient number of such instances. *N.J.R.E.* 406(b).

"Evidence of office procedure can give rise to the presumption of mailing." *Cwiklinski v. Burton,* 217 *N.J.Super.* 506, 510, 526 *A.*2d 271 (App.Div.1987). Further, the fact of mailing may be established "by evidence of a custom with respect to the mailing of letters, coupled with the *testimony of the person whose duty it is to perform or carry out the custom.*" *Ibid.* (quoting *Cook v. Phillips,* 109 *N.J.L.* 371, 373, 162 *A.* 732 (E. & A.1932)).

As stated in 58 Am.Jur.2d *Notice* § 47 (1989):

Personal knowledge ... is required only to establish regular office procedure, not the particular mailing.

[ ]In large offices that handle a volume of mail, direct proof with respect to a particular letter is impractical. In such cases, proof of settled custom and usage of the sender's office, regularly and systematically followed in the transaction of business may suffice as proof of mailing.

In *Bruce v. James P. MacLean Firm,* 238 *N.J.Super.* 501, 507, 570 *A.*2d 49 (Law Div.), *aff'd o.b.,* 238 *N.J.Super.* 408, 570 *A.*2d 1 (App.Div.1989), testimony as to office policy by the people actually charged with the task of mass mailing of notices was held sufficient to prove mailing.

■■■■ Here, there was detailed and specific evidence by testimony and affidavits from the persons who were responsible for office procedures involving the mailing of these claim forms. The claim forms themselves and other evidence as indicated in this opinion add further support to the CALJ's finding that the claims in Attachment B were mailed to Prudential. In sum, the evidence viewed as a whole convincingly supports the CALJ's factual finding that these claims were properly mailed to Prudential in a timely manner.

Proper mailing gives rise to a presumption, namely that "mail matter correctly addressed, stamped and mailed was received by the party to whom it was addressed, which presumption is rebuttable and may be overcome by evidence that the notice was never in fact received." *Szczesny v. Vasquez*, 71 *N.J.Super.* 347, 354, 177 *A.*2d 47 (App.Div.1962). *See Waite v. Doe*, 204 *N.J.Super.* 632, 636, 499 *A.*2d 1038 (App.Div.1985), *certif. denied*, 102 *N.J.* 398, 508 *A.*2d 256 (1986). The evidence not only supports the CALJ's finding that the presumption of receipt was unrebutted but persuasively supports her finding that Prudential received the forms and then lost them. There was unrebutted testimony that many claim forms were "lost" at Prudential and had to be resubmitted. In addition, the CALJ found that the "random dates of the claim forms in issue are a factor in SSI's favor—no batched claims were lost here—only individual claim forms occurring sporadically over more than a year in time." The CALJ reasonably inferred that "discrete claims can and probably were lost, not that a whole batched grouping of claim forms were never mailed by SSI."

The record was more than sufficient for the CALJ to give little weight to "generalized statements" that DMAHS's files had been searched at Prudential without finding the claims in question. Ample support in the record can be found for the CALJ's statement that she had "no confidence that the Prudential material accurately reported all claims sent to it."

Furthermore, there is no indication that plaintiff manufactured the claims. As the Acting Director conceded, the "integrity of the Medicaid Program" is "not an issue in this case."

The case boils down to this: either (1) Prudential lost the Attachment B claim forms, or (2) plaintiff did not submit or resubmit them. This wholly factual question is best resolved by the person who heard the facts. This is not a case such as *Adamar v. Dep't of Law*, 250 *N.J.Super.* 275, 593 *A.*2d 1237 (App.Div.1991) relied on by our dissenting colleague. In *Adamar*, the facts were "either stipulated or undisputed." *Id.* at 281, 593

A.2d 1237. The central issue was whether the plaintiff's admitted conduct violated the regulations of the Casino Control Commission. The Commission's experience and expertise were important factors in deciding this basically non-factual issue.

In the present case, the facts and the inferences to be drawn therefrom are in sharp dispute. Under these circumstances, we need not defer to the factual findings of one who did not hear the evidence. As stated by the New Jersey Supreme Court in *Clowes v. Terminix Intern., Inc.,* 109 *N.J.* 575, 587–88, 538 *A.*2d 794 (1988):

> As a general rule, the reviewing court should give "due regard to the opportunity of the one who heard the witnesses to judge of their credibility * * * and * * * [give] due regard also to the agency's expertise where such expertise is a pertinent factor." *Close v. Kordulak Bros.,* [ ] 44 *N.J.* [589, 599 [210 *A.*2d 753] (1965) ]. In this case, however, the Appellate Division need not have deferred to the Director on the issue of the credibility of the witnesses. Both the court below and the Director based their respective reviews of the transcripts and documentary evidence submitted by the parties. It was the ALJ, and not the Director, who heard the live testimony, and who was in a position to judge the witnesses' credibility. As noted above, the Director rejected many of the ALJ's recommended findings of fact. *Under these circumstances a reviewing court need give no deference to the agency head on the credibility issue.* (emphasis added).

*See also Steinmann v. State, Dep't of Treasury,* 116 *N.J.* 564, 575–76, 562 *A.*2d 791 (1989).

In sum, the factual findings of the CALJ are compellingly supported by the record, to wit that plaintiff timely submitted the Attachment B claims to Prudential, the agency's fiscal agent, and that Prudential probably lost them. A government agency should not be permitted to disallow a valid claim against it by taking advantage of the mistakes and inefficiency of its fiscal agent. Rejection of plaintiff's claims in the face of these clearly warranted factual findings would be a miscarriage of justice.

We affirm the decision of DMAHS as to the claims disallowed by the CALJ and reverse the DMAHS decision as to the claims allowed by the CALJ.

MICHELS, P.J.A.D. (dissenting in part).

I would affirm in its entirety the final decision of the Acting Director of the Department of Human Services, Division of Medical Assistance and Health Services (DMAHS). I, therefore, respectfully dissent from that portion of the majority opinion that reverses the Acting Director's determination to disallow reimbursement of the Medicaid claims made by appellant SSI Medical Services, Inc. (SSI), listed in Attachment B of the initial decision of the Chief Administrative Law Judge.

Acting Director Wheeler reversed the initial decision of the Chief Administrative Law Judge that indicated that SSI's Attachment B Medicaid claim forms were timely filed:

The Director REVERSES the recommended decision on the Attachment–B claims because he disagrees with the Chief ALJ's findings and conclusions for two reasons.

The first reason is that the policy of the New Jersey Medicaid program has been that a provider of service must present "documentary evidence of filing" of the claims with the fiscal agent, *Jewish Hospital and Rehabilitation Center v. DMAHS*, 92 N.J.A.R.2d (DMA) 53, 58 [1992 WL 279813] (1992). As indicated in the holding of the above-cited case, this Division has historically required a higher standard for proof of timely filing of a claim than the general business practice with regard to processing and mailing set-forth in the line of cases on which the Chief ALJ relied in reaching her decision.

The reason for requiring a higher standard of proof concerning the timely filing of a Medicaid claim is two-fold. The first reason, which is not an issue in this case, is to protect the integrity of the Medicaid program which pays providers of service millions of dollars in both State and Federal funds. The second reason, which is in issue in this case, is to avoid a disallowance of the federal share of the Medicaid payments because a claim was not filed within twelve months from the date of service (42 CFR 447.45(d)) and to comply with the State legislative mandate set-forth in N.J.S.A. 30:4D–7, that the Commissioner maximize federal funding.

The Director also rejects the Chief ALJ's recommendation to process the Attachment–B claims for payment because the Petitioner's proofs do not satisfy the requirements to create the presumption of receipt as set-forth in the line of cases relied on by the Chief ALJ. Specifically, in *Lamantia v. Howell Twp.*, 12 N.J.Tax 347, 352–353 (Tax Court 1992), the court held that the proponent of the presumption of receipt must show that there was proper posting, that the article was placed in an appropriate receptacle or delivered to the post office, that the return address was on the envelope and that there was adequate postage on the envelope. However, in this case, the Petitioner's proofs were not sufficient to satisfy these requisites. In the proofs presented, the Petitioner merely recited its customary mailroom procedure and its office practices for submitting Medicaid claim forms.

The Petitioner never provided any evidence that the forms in question were placed in an envelope with the correct forwarding and return address, that the proper postage was affixed nor that the claims were placed in a proper mail receptacle or the post office.

Because the above-mentioned proofs were lacking, the Chief ALJ should not have invoked the presumption of timely receipt of the claims in favor of the Petitioner.

The Director further finds and concludes that the Respondent presented ample proof to rebut the presumption of timely receipt of the claims in question. Specifically, through the testimony of Unisys employees Robert Laverty and Audrey Atkinson (through an affidavit), it was shown that all the information in the Prudential computer for the relevant time period was transferred to the Unisys computer and that none of the claims at issue were received in a timely manner by either Prudential or Unisys.

Furthermore, the Director finds and concludes that if the testimony of the Petitioner's witnesses, to the effect that they would resubmit claims after three or four months if no payment was received, is taken to its logical conclusion, it would mean that Prudential lost the same claims more than once. This appears to be highly unlikely and is not believable.

Therefore, the Director finds and concludes that the Petitioner is not entitled to a presumption of timely filing of the claims set-forth in Attachment–B.

The Director also wishes to correct several errors in the Initial Decision. Specifically, the record should reflect that Pat Snyder (I.D. at Pg. 10) never testified. The tape of this proceeding indicates that the testimony attributed to Ms. Snyder was provided by Linda Nunziato who was the manager of the entire Medicaid claims processing unit at Prudential, including the durable medical equipment and supply claim unit which Ms. Snyder supervised.

The Director also disagrees with the Chief ALJ's interpretation that the Petitioner had one year plus ninety days to submit the claims in issue. Both the Federal and State regulations 42 CFR 447.45(d)(1) and N.J.A.C. 10:49–7.2(a)(1) requires providers to submit all claims no later than twelve months from the date of service.

The ninety day inquiry period allows providers a window of opportunity to question the status of a claim that was already submitted for processing. This ninety day inquiry period does not afford providers extra time to initially submit claims.

The Director also reverses the conclusion that the Medicaid claims processing unit at Prudential was a "black hole" that routinely lost claims. This statement is attributed to Unisys employees and are unsubstantiated hearsay. Although the OAL rules of procedure are liberal in allowing the admission of hearsay statements into evidence, the residuum rule N.J.A.C. 1:1–15.5 requires that some competent evidence be presented to support the hearsay statements. Because there was no supporting evidence presented concerning claims that were "lost" by Prudential, this conclusion is reversed.

I am satisfied from my review of the record that the final decision of the Acting Director is not arbitrary, capricious or unreasonable, and does not lack full support in the evidence. *Henry v. Rahway St. Prison,* 81 *N.J.* 571, 579–580, 410 *A.*2d 686 (1980); *Campbell v. Dep't of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963). *See Bd. of Educ. of Wayne v. Kraft,* 139 *N.J.* 597, 603, 656 *A.*2d 430 (1995); *Dennery v. Bd. of Educ.,* 131 *N.J.* 626, 641, 622 *A.*2d 858 (1993); *Barone v. Dep't of Human Servs.,* 210 *N.J.Super.* 276, 285, 509 *A.*2d 786 (App.Div.1986), *aff'd,* 107 *N.J.* 355, 526 *A.*2d 1055 (1987). '

We must not lose sight of the fact that our role in reviewing the Acting Director's findings and conclusions is limited. *Pub. Serv. Elec. v. New Jersey Dep't of Environ.,* 101 *N.J.* 95, 103, 501 *A.*2d 125 (1985); *Gloucester County Welfare Bd. v. New Jersey Civil Serv. Comm'n,* 93 *N.J.* 384, 390, 461 *A.*2d 575 (1983). As Justice O'Hern explained in *George Harms Constr. v. Turnpike Auth.,* 137 *N.J.* 8, 27, 644 *A.*2d 76 (1994):

Courts can intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy. Although sometimes phrased in terms of a search for arbitrary or unreasonable agency action, the judicial role is restricted to four inquiries: (1) whether the agency's decision offends the State or Federal Constitution; (2) whether the agency's action violates express or implied legislative policies; (3) whether the record contains substantial evidence to support the findings on which the agency based its action; and (4) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors. *Campbell v. Department of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963); *In re Larsen,* 17 *N.J.Super.* 564, 570, 86 *A.*2d 430 (App.Div.1952).

It is not our function to substitute our "independent judgment for that of an administrative body ... where there may exist a difference of opinion concerning the evidential persuasiveness of the relevant proofs." *Matter of Recycling & Salvage Corp.,* 246 *N.J.Super.* 79, 87, 586 *A.*2d 1300 (App.Div.1991) (citing *First Sav. and Loan Ass'n of E. Paterson v. Howell,* 87 *N.J.Super.* 318, 321–322, 209 *A.*2d 343 (App.Div.1965), *certif. denied,* 49 *N.J.* 368, 230 *A.*2d 400 (1967)). We cannot "weigh the evidence, determine the credibility of witnesses, draw inferences and conclusions from the

evidence, or resolve conflicts therein." *Matter of Recycling, supra*, 246 *N.J.Super.* at 87, 586 *A.*2d 1300; *DeVitis v. New Jersey Racing Comm'n*, 202 *N.J.Super.* 484, 489–90, 495 *A.*2d 457 (App. Div.), *certif. denied*, 102 *N.J.* 337, 508 *A.*2d 213 (1985). *See In re Tenure Hearing of Grossman*, 127 *N.J.Super.* 13, 28, 316 *A.*2d 39 (App.Div.), *certif. denied*, 65 *N.J.* 292, 321 *A.*2d 253 (1974).

Additionally, and perhaps most importantly, our review is limited solely to the final decision of the agency and not the initial decision of the Chief Administrative Law Judge. *Adamar v. Dep't of Law*, 250 *N.J.Super.* 275, 295, 593 *A.*2d 1237 (App.Div.1991) (citing *Pub. Advocate Dep't v. Pub. Utils. Bd.*, 189 *N.J.Super.* 491, 507, 460 *A.*2d 1057 (App.Div.1983)). Thus, even if the Chief Administrative Law Judge's findings, conclusions and recommendations may be reasonable, they do not control, and we are not free to substitute them in place of the Acting Director's final decision. *Adamar, supra*, 250 *N.J.Super.* at 295–96, 593 *A.*2d 1237. Similarly, "[m]ere disagreement with an agency's conclusion . . . does not permit a court to reject that conclusion." *Bd. of Educ. of Wayne v. Kraft*, 139 *N.J.* 597, 604, 656 *A.*2d 430 (1995) (citing *Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 587, 538 *A.*2d 794 (1988) and *Goodman v. London Metals Exch., Inc.*, 86 *N.J.* 19, 28–29, 429 *A.*2d 341 (1981)).

Consequently, when the record is considered in light of these fundamentally sound principles, I am persuaded that the Acting Director's decision to reject in part the Chief Administrative Law Judge's findings, conclusions and recommendations, and disallow reimbursement of SSI's Attachment B Medicaid claims should be affirmed.

The Acting Director properly held that SSI failed to satisfy its burden of proving the mailing of the Attachment B Medicaid claim forms and that, therefore, SSI was not entitled to the presumption that these forms had been delivered to DMAHS' fiscal agent, Prudential Insurance Co. (Prudential). New Jersey courts historically have required actual proof of mailing before the presumption of delivery will inure to the party seeking the benefit of that

presumption. The general rule is that there is a presumption that mail correctly addressed, stamped, and mailed was received by the party to whom it was addressed, absent a statute or contract provision respecting notice. That presumption is rebuttable and may be overcome by evidence that the mailing was never in fact received. *Tower Management Corp. v. Podesta,* 226 *N.J.Super.* 300, 304, n. 3, 544 *A.*2d 389 (App.Div.1988); *Johnson & Dealaman, Inc. v. Wm. F. Hegarty, Inc.,* 93 *N.J.Super.* 14, 20, 224 *A.*2d 510 (App.Div.1966); *Szczesny v. Vasquez,* 71 *N.J.Super.* 347, 354, 177 *A.*2d 47 (App.Div.1962). Stated differently, proof of mailing, correct addressing, and due posting of a letter raises the presumption that it was received by the addressee. *Cwiklinski v. Burton,* 217 *N.J.Super.* 506, 509, 526 *A.*2d 271 (App.Div.1987); *Waite v. Doe,* 204 *N.J.Super.* 632, 636, 499 *A.*2d 1038 (App.Div.1985), *certif. denied,* 102 *N.J.* 398, 508 *A.*2d 256 (1986). The conditions necessary to establish the presumption are: (1) the mailing was correctly addressed; (2) proper postage was affixed; (3) the return address was correct; and (4) the mailing was deposited in a proper mail receptacle or at the post office. *Lamantia v. Howell Township,* 12 *N.J.Tax* 347, 352 (Tax Ct.1992). *See also* 1A *Wigmore on Evidence* § 95 (Tillers rev. 1983).

In *Cwiklinski,* we elaborated on the standard for proof of mailing, particularly with respect to office custom. There, the trial court dismissed an automobile negligence complaint for having been mailed after the statute of limitations had expired. The evidence of mailing consisted of an affidavit from the plaintiffs' attorney's secretary claiming that, on a date five weeks before the statute of limitations expired, she typed the complaint, sealed it in an envelope, and placed it with other office mail that was normally hand-delivered to the post office each day. 217 *N.J.Super.* at 508, 526 *A.*2d 271. However, neither she nor anyone else testified that the envelope "was actually deposited at the post office." *Ibid.*

In affirming the trial court's dismissal of the complaint, we held that the secretary's affidavit was insufficient to establish proof of mailing. We explained that evidence of office custom must be

accompanied by evidence that the custom was followed in the particular case, and held that "testimony from one who actually mails the notices or letters is necessary to establish conclusively the fact of mailing." *Id.* at 511, 526 *A.*2d 271. We further concluded that "there was a complete absence of the type of proof upon which our courts have insisted to establish that a letter has been mailed" because the secretary "did not state that the envelope in question was actually taken to the post office and mailed that day." *Ibid.*

Here, as in *Cwiklinski,* SSI did not present proof to establish that the Medicaid claim forms listed in Attachment B were actually mailed. Instead, SSI's proofs simply recite its office custom for mailing claim forms, without any proof that these procedures were actually followed with respect to the disputed forms. Most importantly, no one testified that these forms were in fact mailed, and SSI presented no written proof of such mailing.

Indeed, SSI has not proven any of the four conditions necessary to establish the presumption that Prudential received the disputed forms. None of the affidavits indicate that the forms were placed in an envelope with the correct forwarding and return addresses, that proper postage was affixed, and that the claim forms were placed in a proper mail receptacle or at the post office. Rather, SSI's proof of mailing relies entirely on inferences that it argues should be drawn from evidence of its office custom. The total absence of actual proof establishing mailing prevents SSI from obtaining the benefit of the presumption of delivery.

Although the Acting Director may have characterized the statement by the former Director of DMAHS in *Jewish Hosp. and Rehab. Ctr. v. Div. of Med. Assistance and Health Servs.,* 92 *N.J.A.R.*2d 53, 58, 1992 WL 279813 (1992), that "documentary evidence of filing is required for the petitioner to be able to claim Federal/State funds" as a "higher standard of proof" in matters of this kind, I view this standard as being essentially equivalent to the proof of mailing standards articulated in *Lamantia, Cwiklinski, Waite, Johnson & Dealaman,* and *Szczesny.* In fact, the

Director's conclusion in *Jewish Hosp.* that the "general business practice does not indicate [with] sufficient certainty that these claims were filed within the requisite time period without additional documentation," closely mirrors our holding in *Cwiklinski.*

In any event, I would defer to the Acting Director's interpretation of the law because he is charged with administering it. *Merin v. Maglaki,* 126 *N.J.* 430, 436–37, 599 *A.*2d 1256 (1992). *See also Chambers v. Klein,* 419 *F.Supp.* 569, 578 (D.N.J.1976), *aff'd,* 564 *F.*2d 89 (3rd Cir.1977). This is particularly so because the Acting Director's construction of the law is longstanding, "as opposed to [his] first application of a statute (and its implementing regulation) to a new situation." *State, Dep't of Envir. Protection v. Stavola,* 103 *N.J.* 425, 435, 511 *A.*2d 622 (1986). Further, since the Acting Director's interpretation involves " 'housekeeping' measures designed to facilitate processing of numerous claims," I would defer to his interpretation. *Mazza v. Sec. of Dept. of Health & Human Services,* 903 *F.*2d 953, 959 (3rd Cir.1990).

Even assuming that the Acting Director relied upon a so-called "higher standard of proof," to establish mailing, his reliance on this standard was reasonable. It was not contrary to our law or federal law. It was consistent with DMAHS's past precedent in the *Jewish Hosp.* case. It was also consistent with the cognate federal regulation and achieved the state legislative mandate under *N.J.S.A.* 30:4D–7 to maximize federal funding. Lastly, even if the Acting Director could have chosen another standard, we should defer to his choice because it has a reasonable basis. *See Cooper Dev. Co. v. First Nat. Bank of Boston,* 762 *F.Supp.* 1145, 1151 (D.N.J.1991).

Further, while I generally agree with the principles recited by the majority that "[t]hose who have valid claims against the government ordinarily need not bear a heavier burden in proving those claims than claimants against private parties"; that "[i]n dealing with the public, the government must 'turn square corners' "; and that the "government may not exploit litigational or bargaining advantages that might otherwise be available to private

citizens," they do not apply here and were not violated by the Acting Director. SSI was not faced with a "heavier burden" of establishing that the claim forms were received by Prudential, and DMAHS did not "exploit litigational or bargaining advantages" because the standard in *Jewish Hosp.* and in *Cwiklinski* are virtually identical. Moreover, whether or not this so-called "policy" "conform[s] to the modern concepts of the duty of government to the public" or is "contrary to the general rule that the traditional preponderance of the evidence standard applies to the vast majority of Administrative Agency matters" is irrelevant. The proof of mailing standard in New Jersey is not merely a "policy;" rather, it is a well-settled rule of law that was not violated by the Acting Director's final decision.

Finally, I do not read *Bruce v. James P. MacLean Firm*, 238 *N.J.Super.* 501, 570 *A.2d* 49 (Law Div.), *aff'd o.b.*, 238 *N.J.Super.* 408, 570 *A.2d* 1 (App.Div.1989), as requiring a reversal of the Acting Director's final decision. *Bruce* is distinguishable because the result therein turned on the court's analysis of the particular insurance statute at issue, one which required individual documentation of mailings as to some kinds of notices, but not as to others. Thus, the court deduced a legislative intent that did not require the insurance carrier to establish actual proof of the mass mailing, and allowed it to rely only on evidence of custom. There is no similar statutory pattern in this case. The regulation governing the time of claim submissions, *N.J.A.C.* 10:49–7.2, requires only that the various claims be "submitted" and "received" within the designated time period. The regulation is silent as to the documentation required to establish submission and receipt, and, therefore, the Acting Director was free to require actual proof of mailing, particularly in view of federal-funding implications involved in this matter.

Accordingly, I would affirm the final decision of DMAHS under review.